HARVEY B. DENSMORE, PLAINTIFF IN ERROR, V. A. C. TOMER, DEFENDANT IN ERROR.

1. **Sale of Personal Property**: STATUTE OF FRAUDS: CREDITORS. By the 11th section of our statute of frauds, where in the sale of goods they are left in possession of the seller, in a controversy between his creditors and the purchaser the presumption is, *prima facie*, that the sale was fraudulent. And in such case the burden of showing the sale to have been honest is on the purchaser.

2. ———. The term "creditors," in the above mentioned section, includes all persons who are creditors of the vendor at any time whilst the goods remain in his possession or under his control.

3. **Res Adjudicata**. In the application of the rule of *res adjudicata*, it is essential that its operation be mutual. And a party is not concluded by a judgment in a prior suit, wherein he could not have availed himself of the same means of defense or of redress which are open to him in the second suit. 1 Greenleaf on Ev., sec. 524.

REHEARING of case reported 11 Neb., 118.

*J. C. Crawford*, for plaintiff in error, cited: *Ransom v. Schmela*, 13 Neb., 73. *Crowell v. Horacek*, 12 Neb., 625. Sackett Instructions, 168. Bump on Fraud, 165. On *res adjudicata* cited: *Wales v. Lyon*, 2 Mich., 276. *Kelly v. Donten*, 70 Ill., 385. 1 Green. Ev., 522. *Key v. Dent*, 14 Ind., 86. Bump on Bankruptcy, 260. *Russel v. Place*, 94 U. S., 606. Wells, § 17. *Duchess of Kingston's case*, 11 State Trials, 198.

*E. P. Weatherby* and *W. M. Robertson,* for defendant in error, on question of fraud, cited: *Cadbury v. Nolen,* 5 Penn., 320. *Dewart v. Clement,* 48 Penn., 413. *Burrows v. Stebbins,* 26 Vt., 650. *Shaw v. Thompson,* 43 N. H., 130. *Luke v. Morris,* 30 Conn., 201. *Dexter v. Perkins,* 22 Ill., 143. *Vance v. Boynton,* 8 Cal., 554. *Van Polt v. Lettler,* 10 Cal., 394. Bump's Fraudulent Conveyances, pp. 131–6. *Webster v. Peck,* 31 Conn., 495. *Kitchmer v. Watson,* 24 Ill., 591. *Monroe v. Hursey,* 1 Oregon, 188. *Res adjudicata:* Wells, §§ 14, 282, 440. *McReady v. Rogers,* 1 Neb., 127. *Benz v. Hines,* 3 Kan., 397.

LAKE, CH. J.

The points now urged upon our attention, and the argument to support them, are not materially different from those presented at the former hearing. What we then regarded, and still regard, the principal question in the record, was whether there was sufficient evidence to sustain the jury in finding that the sale of the goods to the plaintiff was fraudulent? As stated in our former opinion, *Densmore v. Tomer,* 11 Neb., 118, the burden of showing the sale to have been honest was on the plaintiff, no actual visible change of possession of the goods having attended it. This burden was a requirement of the statute, which made the sale, without delivery of possession, *prima facie* fraudulent and void as to the creditors of the seller, and conclusively so, unless it was made to appear satisfactorily that it was made in good faith, and without any intent to defraud them. This presumption, which the statute attaches in a controversy of this description, causes a seeming exception to the general rule that he who alleges fraud must clearly prove it in order to prevail. But really it is not an exception. The statute simply makes a single fact —the possession of things sold still in the vendor— evidence of certain value on the question of fraud, which,

however, may be overcome by proof of good faith and a want of fraudulent intent in making the sale.

The evidence on the question of good faith is almost entirely circumstantial, and somewhat conflicting; but if it be examined with a correct understanding of the relation and obligation of the parties to each other as suitors, no serious difficulty will be experienced in finding grounds sufficient to support the verdict, although a different result might reasonably have been predicated upon it.

Whatever title the plaintiff had to the goods he acquired by purchase, without having seen them, from Densmore & Hopper, a mercantile firm then engaged in business at Stanton, in this state. The purchase was made at the plaintiff's home, in the state of Illinois, through C. M. Densmore, his son, a member of and acting for the firm. It included the entire property of Densmore & Hopper, who were at the time financially distressed, and shortly afterwards instituted proceedings in voluntary bankruptcy. The plaintiff knew of this distress. Under these circumstances, the fact that the goods and management of the business were left in the hands of Densmore & Hopper, or of C. M. Densmore, without any apparent change of ownership, was really just what the statute makes it—a strong badge of fraud.

It is urged by counsel "that the failure of the defendant to show that he represented parties who were creditors at the time of the sale alone ought to be sufficient to reverse this case."

It is true, as claimed, that there was no evidence at all on this point. But does the want of it vitiate the verdict? We think not. In designating the classes of persons which the statute protects against such sales, "the creditors of the vendor" and "subsequent purchasers in good faith" are named. The designation "creditors of the vendor" is general, and nominally includes them all, whether they became such either before or after the time of making the

sale.  See sec. 11 of our statute of frauds.  But, as if to remove all doubt respecting this matter, the following section expressly defines the word "creditors," as here used. It declares that it "shall be construed to include all persons who shall be creditors of the vendor or assignor at any time whilst such goods and chattels shall remain in his possession, or under his control."

This construction of the statute, by itself, is of course conclusive, and settles the point against the claim of the plaintiff.  But, even without it, we could not hold as requested to do, for, independently of it, the rule under statutes similar to our own, and under the common law as well, seems to be firmly settled the other way.  In Benjamin on Sales, § 483, it is said that "Sales made by debtors, in fraud of creditors, are usually considered as being governed by the statute (13 Eliz., c. 5) and the decisions made under it; but other statutes had been previously passed on the same subject, and in *Cadogan v. Kennett*, Lord Mansfield said that: 'the principles and rules of the common law, as now universally known and understood, are so strong against fraud in every shape, that the common law would have attained every end proposed by the statutes.  13 Eliz., c. 5, and 27 Eliz., c. 4.'"  Of the former of these statutes, which gives protection to creditors only, it is said: "And it seems that it protects, against fraudulent sales, subsequent creditors, as well as those having claims at the date of the fraudulent conveyance."  And so it is held in numerous cases in this country, under similar statutes, and such seems to be the established rule.  1 Story's Eq. Jurisprudence, § 356.  *Carter v. Grimshaw*, 49 N. H., 100.

This matter of the alleged prior adjudication is again pressed upon our attention, with much earnestness.  It is true that it was but barely referred to in our former opinion, but the conclusion therein reached we still regard as correct.  The controversy respecting the property in the

United States district court relied on as bringing the case within the principle of *res adjudicata,* and which seems to have been determined in favor of C. M. Densmore and J. J. Hopper, who constituted the firm of Densmore & Hopper, was between them and certain of their creditors, by whom their discharge as bankrupts was resisted on the alleged ground, among others, that they had willfully and intentionally concealed " one certain stock of goods in store in the town of Stanton, and State of Nebraska, consisting of dry goods, groceries," etc.   The bankrupts, Densmore & Hopper, denied the concealment, alleging that the property in question belonged to Harvey B. Densmore, the plaintiff here.   It will be seen, therefore, that the real issue in that controversy, and the only one decided, was simply whether the members of the firm of Densmore & Hopper had willfully and intentionally concealed their property.   And it appears that this issue arose after the assignee had seized and actually disposed of the goods, or at least a part of them, and was responsible to the real owner for their value.   To this litigation, neither the assignee nor Harvey B. Densmore were parties, and we do not see upon what principle they could be held bound by it.   We apprehend that counsel would hardly be willing to concede that, if the decision had been the other way, and the bankrupts' discharge refused on the ground of their concealment of these goods, it would have concluded Harvey B. Densmore upon the question of his right to them.   " It is a general rule that a verdict shall not be used against a man where the opposite verdict would not have been evidence for him ; in other words, the benefit to be derived from the verdict must be mutual."   *   *   *   *   " Where the parties are not the same, one who would not have been prejudiced by the verdict cannot afterwards make use of it ; for between him and a party to such verdict the matter is *res nova,* although his title turn upon the same point."   1 Starkie on Evidence, 331.   In 2 Phillips on Evidence,

Cowen & Hill's and Edwards' notes, 6, it is remarked that: "It was resolved by Holt, C. J., and the other judges of the 'court, upon a trial at bar, that no record of a conviction or verdict can be given in evidence but such whereof the benefit may be mutual; that is, such as might have been given in evidence, either for the plaintiff or the defendant." And in 1 Greenleaf on Evidence, § 524, in speaking on this subject, this language is used: "But to prevent this rule from working injustice, it is held essential that its operation be *mutual*. Both the litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either." * * * "Another qualification of the rule is, that a party is not to be concluded by a judgment in a prior suit or prosecution, where, from the nature or course of the proceedings, he could not avail himself of the same means of defense or of redress which are open to him in the second suit."

If instead of granting to the bankrupts a discharge, this judgment had refused it because of their fraudulent concealment of the goods, it is very clear that Harvey B. Densmore would not have been bound by it. He could, and most likely would have said, with effect, "I purchased this property before the proceedings in bankruptcy were commenced, and claim to be the owner of it. On the question of the validity of my title, I have not been heard—have not had my day in court. I was not a party to the bankruptcy proceedings, and therefore am not affected by the result." Such being the attitude of the plaintiff in respect to this judgment, he is clearly within the operation of the wholesome rule of mutuality above referred to, and therefore not in a situation to invoke successfully its aid in support of his title to the goods. On this point the ruling of the court below was clearly right.

For these reasons we must adhere to the judgment heretofore announced.

JUDGMENT AFFIRMED.