for the sale of real property for the payment of debts until he had proved his claim on a judicial settlement of his accounts. This is not the rule in the case of other creditors, as they may proceed without a judicial settlement. The latter clause of section 2740 is suggestive of the idea that the statute of limitations is suspended as to all proceedings. If the object of the section was to suspend the statute only for the purpose of proving the claim against the personal property, it would be inferred that the executor had realized all that could be collected prior to the judicial settlement, (Code, § 2514, subd. 8; Id. § 2729;) and it was not necessary to add to the section that after the first judicial settlement the statute begins to run against the debt. Judge Bradley said, on the question whether Mr. Powers could apply the proceeds of sales of land to the payment of his debt:

"The power was given to the executor to sell for any purpose which, in his discretion, should render it desirable so to do. This placed it within his power to make sale when, in his judgment, it was required to pay debts, taxes, or other expenses within his trusts, and to the extent by him deemed necessary for such purpose, subject, however, to the qualification that some permissible occasion existed for the exercise of his discretion in that respect."

We have already noted that one sale was made in 1883, more than three years after the granting of letters, and ten years after the death of Mrs. Macomber, and when the debt of Mr. Powers had outlawed but for the provisions of section 2740. The decision of the court of appeals on the question of the application of the proceeds of sale was made substantially on the same briefs as in this case, and seems to us to be an adjudication on the questions submitted, and we place our decision solely on the authority of that case. Judgment in favor of the defendant George A. Powers, as executor, that he has power under the will of Sarah Macomber to make the sale and conveyance in the submission referred to, and may make the same, and convey a good title in fee thereby, and that said sale shall be specifically performed, with costs to defendant George A. Powers, executor, to be paid out of the estate. All concur.

---

## BUCKEL v. SUSS.

(Superior Court of New York City, General Term.   January 3, 1893.)

ACTION BY WIFE—FOR ENTICING AWAY HUSBAND.

Where a wife, acting on the advice of counsel, leaves her husband, and brings an action for divorce, which results in an agreement for separation, sanctioned by the court, the wife cannot maintain an action for the enticing away of her husband while she was living and cohabiting with him as his wife. 18 N. Y. Supp. 719, affirmed.

Appeal from trial term.

Action by Elizabeth Buckel against Anna Suss for enticing away plaintiff's husband. From a judgment dismissing the complaint, and from an order denying plaintiff's motion for a new trial, plaintiff appeals. Affirmed.

Argued before FREEDMAN and GILDERSLEEVE, JJ.

Charles Steckler, for appellant.

Guggenheimer & Untermeyer, (Samuel Untermeyer, of counsel,) for respondent.

PER CURIAM.   For the reasons set forth in the opinion of the court below, (18 N. Y. Supp. 719,) the judgment and order appealed from are affirmed, with costs.

===

TALLMADGE et al. v. LOUNSBURY, Treasurer.

(Superior Court of New York City, General Term.   January 3, 1893.)

1. PRINCIPAL AND AGENT—APPOINTMENT.
    The mere fact that several members of the campaign committee of the Republican National League expressed an opinion that certain blanks ought to be printed, confers no authority on the person suggesting the scheme to bind the league by ordering the printing to be done.

2. SAME—RELIANCE ON AGENT'S AUTHORITY.
    The Republican National League is not liable for the printing of campaign literature on the ground that it had clothed its president with full authority to make any and all contracts in its behalf, where it appears that such printing was not done in reliance on an order from the president, but on an order given by the representative of the treasurer of the national committee.

3. ASSUMPSIT—WORK AND LABOR—ACCEPTANCE OF BENEFITS.
    The mere fact that certain campaign literature had at its head the name and symbol of the Republican National League, and that such literature was received at and mailed from its headquarters, does not render it liable for the printing, where it appears that the function of the league was merely to distribute literature furnished it by the national committee; that none of the committees vested with the management of the league's affairs had ordered such literature to be printed; and that none of the members of such committees, with the exception of two, knew of the performance of the work.

4. SAME.
    The fact that campaign literature, printed by plaintiffs, and used by the National Republican League, brought a large sum of money into the hands of its president, does not render the league liable for the printing, where it appears that a larger sum than that received from this source was actually paid plaintiffs by the league.

5. PRINCIPAL AND AGENT—RATIFICATION.
    The unauthorized acts of the agent of the National Republican League in ordering the printing of campaign literature cannot be considered as having been ratified by it, where it does not appear that the claim for the work was ever presented to the league convention, or to its executive or subexecutive committees, or that the delegates to the convention or the members of the committees knew of the existence of such claim.

Appeal from judgment on report of referee.

Action by Daniel W. Tallmadge and George G. Martin against Phineas C. Lounsbury, as treasurer of the Republican League of the United States, for furnishing and distributing campaign literature and political printing.   From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

The cause was referred to Louis C. Raegener, Esq., who, on October 29, 1890, filed the following memorandum of decision:

"The plaintiffs, constituting the firm of Tallmadge & Martin, printers and stationers, at the city of New York, claim that during the presidential campaign of 1888 they let certain premises at No. 64 Broad street, and that they furnished and distributed what has been termed herein 'campaign literature' and political printing of the value of nearly $25,000 to the defendant, the Republican League