EMMA SHERIFF v. WATSON E. SHERIFF *et ux.*

(Filed Feb. 11, 1899.)

ACTION FOR DAMAGES — *Alienating Husband's Affections — Demurrer to Evidence.* In an action for damages by a wife against her husband's parents for alienating her husband's affections, evidence that shows that defendants gave their son a home, but refused the same to the plaintiff; that they had both told her, in her husband's presence, that she was filthy and dirty, and unfit to raise a family; and that plaintiff's father-in-law told a third person, who had given to plaintiff a temporary home, that he had been trying to separate his son and plaintiff for some time, and had succeeded, and that now he intended to keep them apart—is not sufficient to authorize a verdict for plaintiff, and it was proper for the trial court to sustain a demurrer to such evidence, and to discharge the jury.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, District Judge.*

*Lawrence & Huston,* for plaintiff in error.

*Herod & Widmer,* for defendant in error.

Action by Emma M. Sheriff against Watson E. Sheriff and Mary A. Sheriff. Judgment for defendants, and plaintiff brings error. Affirmed.

Opinion of the court by

BURWELL, J.: Plaintiff in error commenced this action in the district court of Logan county against the defendants for $5,000 damages for alienating the affections of the plaintiff's husband. On the trial, after plaintiff had introduced her evidence and rested her case, the defendants each demurred thereto, which demurrers were sustained, and the jury discharged. A motion for new trial was filed and overruled, and thereupon plaintiff appealed to this court.

The facts in this case are about as follows: Plaintiff and Watson D. Sheriff were married in August of 1889. After their marriage they lived with the defendants, who are the father and mother of plaintiff's husband, in Missouri; the plaintiff's husband being employed by defendants. In 1892 all of the parties above named came to Oklahoma, locating in Guthrie; and plaintiff and her husband lived in the same house with the defendants for awhile, but later moved into a house by themselves. Some time after that, however, they moved to Texas, where they resided until some time in August of 1895, when the defendant, Mary A. Sheriff, hearing of the sickness of plaintiff's children, went from Guthrie to plaintiff's home,

in Texas, and persuaded plaintiff and her husband to come back to Guthrie. It was stated by plaintiff, in her evidence, that she did not wish to return to Guthrie, but desired to live in Texas; yet notwithstanding that fact, the defendant, Mary A. Sheriff, insisted on their returning to Guthrie, which they did. On arriving at the railroad depot at Guthrie, plaintiff and Mary A. Sheriff, together with plaintiff's two children, took a hack to defendant's home; her husband walking. When plaintiff arrived at the home of the defendants, the defendant Watson E. Sheriff met them at the door, and took the children into the house, but refused to permit the plaintiff to come in. She then returned to meet her husband, and, after meeting him, they returned to the house together. The defendant Waston E. Sheriff again refused to let plaintiff enter his house, and turned her away. Her husband let her leave alone, and he stayed with his father's family. The plaintiff found shelter with a friend, who the next day talked with Watson E. Sheriff about his daughter-in-law; and, in the course of conversation, Mr. Sheriff said that: "By God! I have been trying to separate those people for some time, and have succeeded now; and, by Jesus! I am going to keep them apart, if I can." It was also shown by evidence that the defendants on different occasions upbraided plaintiff, in the presence of plaintiff's husband, for being filthy and dirty, and for not properly taking care of her children, and stated that she was not fit to raise a family, and charged her with being extravagant.

Do these facts establish that the defendants conspired together to, and did, alienate the affections of plaintiff's husband? This is the only question we need to consider. Admitting, for the sake of argument, that plaintiff's hus-

band had the most kindly feelings for her, and that he held her in the highest esteem, and that subsequently he became cold towards her, and finally'secured a divorce, the record does not establish that this condition was brought about by the defendants.  It is argued by counsel for plaintiff that the jury should have been permitted to say as to whether or not the facts proved established that the defendants alienated from plaintiff her husband's affections.  That would be true, if there were sufficient evidence to sustain a verdict; but, after having read the entire record, we are of the opinion that, had a jury returned a verdict for plaintiff for any amount, the court would have been compelled to set it aside.  A court should sustain a demurrer to plaintiff's evidence, or direct a verdict, when, in its opinion, such evidence is insufficient to sustain a verdict.  The case of *Young v. Young,* (Wash.) 35 Pac. 592, is almost exactly like the one under consideration.  The court said: "An action by a wife against her husband's parents for causing him to abandon her cannot be maintained on evidence that defendants drove plaintiff from their home, and permitted the son to remain there; that his mother, two days thereafter, told plaintiff's father that he might as well understand that her son would no longer live with plaintiff; that the son thereafter failed to keep an engagement to meet plaintiff; and that the son's mother thereafter asked a person to use her influence to keep him from living with plaintiff."  Other authorities could be cited, but we deem it unnecessary.  The defendants had a legal right to give to their son a home, and to refuse to shelter and provide for plaintiff.  The record in this case fails to satisfy our minds that plaintiff's husband ever had that high regard

for her which a husband should entertain for his wife. In fact, his part in the entire transaction is not commendable. The order of the trial court overruling the motion for a new trial is hereby affirmed, at the cost of appellant.

Burford, C. J., having presided in the court below, not sitting; all of the other Justices concurring.