## J. H. MILLER v. J. NORRIS CARNES.[1]

June 9, 1905.

Nos. 14,425—(194).

**Cross-Examination.**

Where a party to an action was called by his adversary for cross-examination, whether the examination may be continued by his own counsel rests in the discretion of the trial court. Jones v. Bradford, 79 Minn. 396; Olson v. Aubolee, 92 Minn. 312.

**Accounting.**

The issue being whether a certain accounting had been had, and the correctness of the same, it was not error to admit evidence of the general business transactions in which the parties to the accounting had been engaged.

**Award.**

The admissions and declarations of common-law arbitrators, made during the course of an attempted arbitration, do not constitute an award; and, in the absence of any evidence that a final award was made by the arbitrators, it will be conclusively presumed that none was made.

**Charge to Jury.**

Under the evidence in this case, defendant was not entitled to an instruction to the effect that the jury should consider whether or not plaintiff advised defendant to destroy certain checks.

Action in the district court for Morrison county to recover $396 and interest upon an account stated. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*R. S. Clarke* and *Lindbergh & Blanchard,* for appellant.

*Stewart & Brower,* for respondent.

LEWIS, J.

The complaint sets forth that plaintiff and defendant on March 6, 1902, had an accounting whereby there was determined to be due plaintiff from defendant $400, which amount defendant then and there agreed to pay, and no part of which has been paid except $4. The answer denies that such an accounting was had, and by way of defense

[1] Reported in 103 N. W. 877.

alleged that April 16, 1902, the parties had an accounting, whereby there was determined to be due plaintiff from defendant the sum of $615.54, which amount had been paid. The answer further states that in August, 1902, demand was made for $396, which defendant was informed and believed was the same claim attempted to be set forth in the complaint. It was further stated that the claim arising out of such alleged accounting and demand was mutually submitted to arbitration of the parties, and that the arbitrators rendered a decision therein in favor of defendant, finding that nothing was due plaintiff. The arbitration was put in issue by the reply, and the cause went to trial, resulting in a verdict for plaintiff for $396. It developed at the trial that the parties had been engaged in partnership in the purchase and sale of cattle, and plaintiff had advanced to defendant for such business a considerable sum of money; and the final issue, as submitted to the court, was whether a $4 check admitted to have been given by defendant to plaintiff was by mistake made that amount instead of $400, and whether at that time defendant owed plaintiff $400.

1. In order to lay the foundation for the introduction of the alleged check supposed to be lost, plaintiff called defendant for cross-examination under the statute, and elicited from him the fact that all of his checks drawn in favor of plaintiff covering the transaction at the time in question had been burned; and counsel for defendant asked the witness upon cross-examination to explain how the checks happened to be destroyed, whereupon the court sustained an objection that it was not a proper time for cross-examination. Subsequently the whole subject was gone into, and defendant had ample opportunity to make such explanation concerning the matter as he saw fit. It is the rule in this state that the method of examination by the opponent, when a party is called for cross-examination under the statute, is entirely within the discretion of the trial court. We find no ground for abuse of discretion on this occasion. While the court might very properly have permitted the witness at that time to explain his theory that the checks were burned with the knowledge and consent of plaintiff, we find nothing in the record to indicate that the jury were prejudiced by the ruling. Jones v. Bradford, 79 Minn. 396, 82 N. W. 651, and Olson v. Aubolee, 92 Minn. 312, 99 N. W. 1128.

2. Many assignments of error are directed to the rulings of the court

with respect to the scope of the inquiry upon the ground that the range of examination was too broad, and that plaintiff should not have been permitted to go into the transaction between the parties respecting their business operations. We find no error in this regard. The account set forth in the complaint was not admitted, and, within the reasonable discretion of the trial court, the entire business transaction between the parties was open to investigation, as bearing on the question whether or not there was anything due plaintiff from defendant.

3. It was conclusively established by the evidence that, although the parties agreed to submit their differences to arbitration, no agreement was arrived at, and no award reported by the arbitrators. Some of the errors assigned were directed to the rulings of the court upon offers of proof as to what took place between the arbitrators prior to the time of any final agreement. If the object of this line of evidence was to show that, by the conduct, admissions, or statements of the arbitrators, they had arrived at an award, it was clearly incompetent. An award could only be proven by the fact itself, and not by any admissions or statements which the arbitrators may have made during consultation. It is clear that, although some of the arbitrators were of the opinion that not sufficient evidence had been introduced before them to make out a claim against defendant, yet in fact they agreed to disagree, and dropped the matter without making any final award.

4. It developed in the course of the trial that plaintiff and defendant were together at the time when defendant burned the checks which covered the critical period of their business relations. Plaintiff's account of what occurred was that, on being asked by defendant what he did with his old checks, plaintiff replied that he generally checked them up with the stubs, and, if they compared, burned them, and that defendant then threw a bunch of checks into the fire. Defendant testified that after plaintiff had checked up their business transactions, and a settlement had been made, defendant asked plaintiff what he should do with the checks, to which plaintiff replied: "Do as I do. Burn them." But it developed that defendant had also burned his check stubs. There being neither checks nor stubs in existence during the time the alleged $400 check was issued, the entire evidence on the part of defendant depended upon his statement that he had issued such a check, and, according to the testimony of some of the arbitrators,

that such was one of the issues submitted to them.   On this branch of
the case plaintiff testified that, upon receiving a check from defendant,
he took it for a $400 check, and deposited it in the bank, supposing it
to be for that amount, and afterwards, upon having his bankbook
written up, he discovered his mistake, and found that it was only a
$4 check.   It is admitted that the check drawn in favor of plaintiff by
defendant March 6, 1902, was for $4, and that the same was credited
to plaintiff on the books of the bank for that sum, and charged up to
defendant at $4 in his account at the bank.

The court instructed the jury upon this branch of the case that they
should take into consideration the circumstances of the burning of the
checks, and, if they were satisfied that defendant burned the checks
for the purpose of preventing their being introduced in evidence, they
would have a right to consider that fact, and, if they were satisfied that
he had done so honestly, it would have no bearing against him.   There-
upon counsel for defendant requested the court to instruct the jury
that, should they find that plaintiff advised defendant to burn the
checks, with the idea of destroying evidence, they should also consider
that fact, whereupon the court said to the jury:

> As counsel has called it to my attention, in order that you
> may thoroughly understand I will repeat to you the evidence on
> that point: Mr. Miller was at the house of Mr. Carnes, and Mr.
> Carnes had those checks there, and he asked Mr. Miller what
> he done under those circumstances.   Miller says, "I check them
> up and see that they are correct with the stubs, and, if I find
> them so, I burn up the checks."   But in this case the evidence
> shows both checks and stubs were burned, and there is no
> evidence here that that was the custom of Mr. Carnes either
> before or after.   Mr. Carnes states that he done that in good
> faith.   If he did, of course, he is not to be held responsible.   If
> he did not, it is testimony against him.

Conceding that the additional instruction amounted to a refusal to
give the request, we do not think error was committed.   In the first
place, it was stipulated that the check which plaintiff received upon the
date in question was for $4, and there was no evidence that plaintiff
had received a $400 check, except the statement of defendant as he
recalled it; his checks and stubs having been burned.   It was not seri-

ously claimed that plaintiff transferred or collected the money upon a $400 check. Besides, defendant did not deny plaintiff's version of what took place when the checks were burned. Plaintiff's remark: "Do the same as I do. Burn them"—as testified to by defendant, when taken into consideration with plaintiff's account, which is not denied, did not raise a serious question as to plaintiff's motives. There was no evidence tending to show that plaintiff was leading defendant into a trap by getting him to destroy the evidence of the checks, with the expectation of afterwards making it appear that he had received a $4 instead of a $400 check; and, under the evidence, defendant was not entitled to the instruction.

We find no errors in the rulings.

Order affirmed.