# FRANK E. LUICK v. JOHN A. ARENDS.

(132 N. W. 353.)

**Divorce — Conclusiveness of Judgment — Res Judicata — Alienation of Affections.**

1. In an action for alienation of the affections of the wife, and for damages resulting, a decree of divorce obtained by the wife from the plaintiff after litigation on the merits, granted because of the husband's adjudged cruel and inhuman treatment of the wife during the period of time in issue under the pleadings in the alienation of affections case, the divorce action and proceedings, including the decree of divorce are not *res judicata* on the questions involved in the alienation of affections case against the third party, and plaintiff is not barred or estopped thereby from recovery against the third party for alienating the affections of the wife.

**Divorce — Conclusiveness of Judgment — Evidence — Res Judicata.**

2. In such an action the decree of divorce is a judgment *in rem* to the extent only of judicially establishing the prior existence of the marriage, its dissolution, and the status of the parties thereafter under the decree; such judgment is in all other respects a judgment *in personam*. The legal grounds upon which the decree was granted, and the pleadings in the divorce action, are not to be construed as a part of the judgment *in rem*. Therefore, the grounds upon which such decree is granted, as well as the pleadings in the divorce action, are not admissible as part of a judgment *in rem* in the trial of an issue for alienation of the wife's affections, brought by the husband against a stranger to the divorce proceedings. The divorce decree alone, being a judgment *in rem* to the extent only as above defined, is admissible to establish the prior marriage, prove its dissolution, and fix the status of the parties in relation to the admission of testimony and issues to be determined in the alienation of affections case on trial.

**Husband and Wife — Alienation of Affections — Evidence — Wife's Declarations.**

3. In this class of actions, the existence or nonexistence of the wife's affection being in issue, her declarations to third persons not in the presence of her husband, as to her love of or hatred for him, when made at a time when there exists no motive to deceive, and before the commencement of the alienating influences complained of, are admissible; but any statements of facts or reasons to justify or explain her declarations of love or hatred are inadmissible.

**Divorce — Alienation of Affections — Evidence — Foreign Statutes.**

4. The statute of a foreign state declaring a forfeiture of a cause of action for alienation of a wife's affection when the husband has been by such wife, because of his fault, divorced, is given no extraterritorial force, and such stat-

ute does not operate to forfeit a right of action existing and sued upon here prior to the granting of the divorce in the state where such statute exists.

**Husband and Wife — Privileged Communications — Evidence.**

5. Privileged communications between husband and wife, under § 7253, Rev. Codes 1905, defined and applied in this case, where the former wife was offered as a witness in defendant's behalf against her former husband, to prove statements made by the husband and wife and events occurring during the period of her marriage relation.

**Husband and Wife — Alienation of Affections — Advice of Near Relations — Brother-in-law.**

6. A parent, brother, or sister has the right to counsel a married son, daughter, brother, or sister in good faith, within reasonable limits, when not maliciously done and when given for the apparent best interests of the party advised, without the relative so advising being liable to an action for injury caused one party to the marriage resulting from the advice so given; yet this privilege by reason of relationship amounts to but the presumption that the party so advising, because of natural love and affection of near blood relatives for one another, would act only for the best interests and with proper motives toward the person advised. Whether the privilege thus accorded near blood relatives in such matters extends to a brother-in-law of the wife advised in this case is a question of fact for the jury to determine under all the circumstances, under proper instructions from the court.

**Husband and Wife — Alienation of Affection — Interference of Stranger — Question for Jury.**

7. A stranger in blood inducing a wife to leave her husband, or taking her away with or without her consent, and encouraging her to remain away from him, does so at his peril, and the burden is on him to show good cause, good faith, and justification for such acts; but the question as to whether such person was justified in so doing is a question for the jury.

**Witnesses — Cross-examination under Statute — Redirect Not Permitted — Discretion of Court.**

8. The permitting of redirect examination immediately following cross-examination of the defendant under the statute, in plaintiff's main case, is discretionary with the trial court, but the better practice is not to allow such redirect examination until defendant's main case.

**Husband and Wife — Alienation of Affections — Evidence — Verdict.**

9. Evidence examined and held insufficient to sustain the verdict.

Opinion filed June 8, 1911.   Rehearing denied Sept. 12, 1911.

# Appeal from District Court, Richland county; *Allen,* Judge.

Action by Frank E. Luick against John A. Arends. From a judgment for plaintiff, defendant appeals.

Reversed and remanded.

*McCumber & Forbes* and *A. D. Pugh,* for appellant.

The evidence is insufficient to justify the verdict. Maloney v. Phillips, 118 Iowa, 9, 91 N. W. 757; Bathke v. Krassin, 78 Minn. 272, 80 N. W. 950; Sheriff v. Sheriff, 8 Okla. 124, 56 Pac. 960; Stanley v. Stanley, 27 Wash. 570, 68 Pac. 187; Young v. Young, 8 Wash. 81, 35 Pac. 592; Hollister v. Valentine, 69 App. Div. 582, 75 N. Y. Supp. 115; Rubenstein v. Rubenstein, 60 App. Div. 238, 69 N. Y. Supp. 1067; Lund v. Spencer, 42 App. Div. 543, 59 N. Y. Supp. 762; White v. Ross, 47 Mich. 172, 10 N. W. 188; Hoyt v. Graham, — Iowa —, 105 N. W. 456; Park v. Park, 40 Colo. 354, 91 Pac. 830; Peat v. Chicago, M. & St. P. R. Co. 128 Wis. 86, 107 N. W. 355; Leavell v. Leavell, 122 Mo. App. 654, 99 S. W. 460; Miller v. Miller, 122 Mo. App. 693, 99 S. W. 757; Smith v. Gillapp, 123 Ill. App. 121; White v. White, 76 Kan. 82, 90 Pac. 1087; Rankin v. Cardillo, 38 Colo. 216, 88 Pac. 170.

Defendant's acts must alienate or cause the separation. 21 Cyc. 1619, note 99; Prettyman v. Williamson, 1 Penn. (Del.) 224, 39 Atl. 731; Avery v. Avery, 110 Iowa, 741, 81 N. W. 778; Tasker v. Stanley, 153 Mass. 148, 10 L.R.A. 468, 26 N. E. 417; Servis v. Servis, 172 N. Y. 438, 65 N. E. 270; Leavell v. Leavell, 122 Mo. App. 654, 99 S. W. 460; Miller v. Miller, 122 Mo. App. 693, 99 S. W. 757; Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639; Smith v. Gillapp, 123 Ill. App. 121; Scott v. O'Brien, 129 Ky. 1, 16 L.R.A.(N.S.) 742, 130 Am. St. Rep. 419, 110 S. W. 260; White v. White, 76 Kan. 82, 90 Pac. 1087.

Husband's consent to the wife's acts a complete bar. 15 Am. & Eng. Enc. Law, 2d ed. 863; 21 Cyc. 1619; Prettyman v. Williamson, 1 Penn. (Del.) 224, 39 Atl. 731; Peek v. Traylor, 17 Ky. L. Rep. 1312, 34 S. W. 705; Schorn v. Berry, 63 Hun, 110, 17 N. Y. Supp. 572; Kohlhoss v. Mobley, 102 Md. 199, 62 Atl. 236, 5 A. & E. Ann. Cas. 865.

There was no ill-will or improper motive towards plaintiff, or wanton or reckless conduct implying malice, warranting exemplary damages. Rev. Codes 1905, § 6562; Wrege v. Jones, 13 N. D. 267, 112 Am. St. Rep. 679, 100 N. W. 705, 3 A. & E. Ann. Cas. 482; Lindblom

v. Sonstelie, 10 N. D. 140, 86 N. W. 357; Beisel v. Gerlack, 221 Pa. 232, 18 L.R.A.(N.S.) 516, 70 Atl. 721; White v. White, 76 Kan..82, 90 Pac. 1087; Avery v. Avery, 110 Iowa, 741, 81 N. W. 778; Shoemaker v. Sonju, 15 N. D. 518, 108 N. W. 42, 11 A. & E. Ann. Cas. 1173.

Verdict based on testimony of a discredited or infamous witness will be set aside. State v. Howser, 12 N. D. 495, 98 N. W. 352; State v. Prendible, 165 Mo. 329, 65 S. W. 559; State v. Huff, 161 Mo. 459, 61 S. W. 908, 1104; People v. Baker, 39 Cal. 686; Gibbons v. People, 23 Ill. 518; People v. Lyons, 51 Mich. 215, 16 N. W. 380; Owens v. State, 35 Tex. 361; Peat v. Chicago, M. & St. P. R. Co. 128 Wis. 86, 107 N. W. 355; Fuller v. Northern P. Elevator Co. 2 N. D. 220, 50 N. W. 359.

Judgment in divorce is *in rem*. 1 Greenl. Ev. 5th ed. § 525; 1 Freeman, Judgm. 4th ed. § 313.

When divorce decree as bar to suit for alienation of affections. Gleason v. Knapp, 56 Mich. 291, 56 Am. Rep. 388, 22 N. W. 865; Prettyman v. Wiliamson, 1 Penn. (Del.) 224, 39 Atl. 731; Waldron v. Waldron, 45 Fed. 322; Metcalf v. Tiffany, 106 Mich. 504, 64 N. W. 479; Buckel v. Suss, 2 Misc. 571, 21 N. Y. Supp. 907, affirming 28 Abb. N. C. 21, 18 N. Y. Supp. 719.

Identity of issue, although not of parties, warrants plea of *res judicata*. 2 Jones, Ev. §§ 602–619; Doremus v. Root, 23 Wash. 710, 54 L.R.A. 649, 63 Pac. 572; Wilson v. Buell, 117 Ind. 315, 20 N. E. 231; Whatley v. Manheim, 2 Esp. 608 (English); O'Brien v. Heeney, 2 Edw. Ch. 246; Sturtevant v. Randall, 53 Me. 149; Mayer v. Foulkrod, 4 Wash. C. C. 503, Fed. Cas. No. 9,342; Gleason v. Knapp, 56 Mich. 291, 56 Am. Rep. 388, 22 N. W. 865; Hill v. Bain, 15 R. I. 75, 2 Am. St. Rep. 873, 23 Atl. 44; Glaze v. Citizens' Nat. Bank, 116 Ind. 492, 18 N. E. 450; 1 Van Fleet, Former Adjudication, 461; Patton v. Loughridge, 49 Iowa, 218; 2 Van Fleet, Former Adjudication, 912; Van Rensselaer v. Akin, 22 Wend. 549.

Presumption of good faith exists as to relatives of wife whose husband sues for alienation. Powell v. Benthall, 136 N. C. 145, 48 S. E. 598; Trumbull v. Trumbull, 71 Neb. 186, 98 N. W. 683, 8 A. & E. Ann. Cas. 812; Zimmerman v. Whiteley, 134 Mich. 39, 95 N. W. 989; Smith v. Lyke, 13 Hun, 204; 21 Cyc. 1620; Multer v. Knibbs, 193

Mass. 556, 9 L.R.A.(N.S.) 322, 79 N. E. 762, 9 A. & E. Ann. Cas.
958; Leavell v. Leavell, 122 Mo. App. 654, 99 S. W. 460; Miller v.
Miller, 122 Mo. App. 693, 99 S. W. 757; Smith v. Gillapp, 123 Ill.
App. 121.

Same of brother-in-law. Powell v. Benthall, 136 N. C. 145, 48 S.
E. 598.

Record in divorce case admissible in suit for alienation. Gleason v.
Knapp, 56 Mich. 291, 56 Am. Rep. 388, 22 N. W. 865; Luick v. Luick,
132 Iowa, 302, 109 N. W. 783; 2 Van Fleet, Former Adjudication,
772, 915, § 376; 23 Cyc. 1534–1537.

Wife's declarations inadmissible, except to show effects of defend-
ant's influence upon her. Hillers v. Taylor, 108 Md. 148, 69 Atl.
715; Westlake v. Westlake, 34 Ohio St. 634, 32 Am. Rep. 397; Smith
v. Gillapp, 123 Ill. App. 121; Dodge v. Rush, 28 App. D. C. 149; 8
A. & E. Ann. Cas. 671; Wigmore, Ev. §§ 1730, 1768, and § 1730 of
Supplement; 3 Elliott, Ev. § 1648; White v. Ross, 47 Mich. 172, 10
N. W. 188; Boues v. Steffens, 43 N. Y. S. R. 29, 16 N. Y. Supp. 819;
Beach v. Brown, 20 Wash. 266, 43 L.R.A. 114, 72 Am. St. Rep. 98,
55 Pac. 46; 1 Am. & Eng. Enc. Law, 2d ed. 180; Preston v. Bowers,
13 Ohio St. 1, 82 Am. Dec. 430.

Wife's complaints of husband's ill treatment are admissible. 21 Cyc.
1624; Perry v. Lovejoy, 49 Mich. 529, 14 N. W. 485; Baker v. Baker,
16 Abb. N. C. 293; Gilchrist v. Bale, 8 Watts, 355, 34 Am. Dec. 469;
Glass v. Bennett, 89 Tenn. 478, 14 S. W. 1085; 21 Cyc. 1625; Pretty-
man v. Williamson, 1 Penn. (Del.) 224, 39 Atl. 731; Bennett v.
Smith, 21 Barb. 439; Payne v. Williams, 4 Baxt. 583; Smith v. Lyke,
13 Hun, 204; Holtz v. Dick, 42 Ohio St. 23, 15 Am. Rep. 791; Tasker
v. Stanley, 153 Mass. 148, 10 L.R.A. 468, 26 N. E. 417.

*Purcell & Divet,* for respondent.

Grant of a new trial is in the sound discretion of the court, to be set
aside only for abuse. Nilson v. Horton, 19 N. D. 187, 123 N. W.
397; Pengilly v. J. I. Case Mfg. Co. 11 N. D. 249, 91 N. W. 63;
Ross v. Robertson, 12 N. D. 27, 94 N. W. 765; State v. Howser, 12
N. D. 495, 98 N. W. 352; Galvin v. Tibbs, H. & Co. 17 N. D. 600,
119 N. W. 39; State v. Foster, 14 N. D. 561, 105 N. W. 938; Libby

v. Barry, 15 N. D. 286, 107 N. W. 972; Rath v. Rath, 2 Neb. (Unof.) 600, 89 N. W. 612.

Wife's statements showing her affection, or lack of affection, are admissible. 1 Greenl. Ev. 259; Phillipps, Ev. 147; Fratini v. Caslini, 66 Vt. 273, 44 Am. St. Rep. 843, 29 Atl. 352; Higham v. Vanosdol, 101 Ind. 160; Horner v. Yance, 93 Wis. 352, 67 N. W. 720; Horton, Ev. § 225; Collins v. Stephenson, 8 Gray, 438; 3 Wigmore, Ev. § 1730; Williams v. Williams, 20 Colo. 51, 37 Pac. 616; Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639.

All communication between parties to marriage when that relation exists are inadmissible. Rev. Codes, § 7253, subdiv. 1; Leppla v. Minnesota Tribune Co. 35 Minn. 310, 29 N. W. 127; Buckingham v. Roar, 45 Neb. 244, 63 N. W. 398; Henderson v. Chaires, 25 Fla. 26, 6 So. 164; Anderson v. Anderson, 9 Kan. 112; Chicago, K. & N. R. Co. v. Ellis, 52 Kan. 41, 33 Pac. 478; Van Zandt v. Shuyler, 2 Kan. App. 118, 43 Pac. 295; Sanborn v. Gale, 162 Mass. 412, 26 L.R.A. 864, 38 N. E. 710; Hitchcock v. Moore, 70 Mich. 112, 14 Am. St. Rep. 474, 37 N. W. 914; Newstrom v. St. Paul & D. R. Co. 61 Minn. 78, 63 N. W. 253; Ayers v. Ayers, 28 Mo. App. 97; Warner v. Press Pub. Co. 132 N. Y. 181, 30 N. E. 393; People v. Mullings, 83 Cal. 138, 17 Am. St. Rep. 223, 23 Pac. 229; Stein v. Bowman, 13 Pet. 220, 10 L. ed. 134; Emmons v. Barton, 109 Cal. 662, 42 Pac. 303; Stanley v. Stanley, 27 Wash. 570, 68 Pac. 187.

A judgment is admissible only where there is mutuality between parties to the action in which it was rendered, and in the one offered. Sickler v. Mannix, 68 Neb. 21, 93 N. W. 1018; Whitcomb v. Hardy, 68 Minn. 265, 71 N. W. 263; Goodnow v. Litchfield, 63 Iowa, 275, 19 N. W. 226; Nowak v. Knight, 44 Minn. 241, 46 N. W. 348; Freeman, Judgm. §§ 154–158; Densmore v. Tomer, 14 Neb. 392, 15 N. W. 734; Bell v. Wilson, 52 Ark. 171, 5 L.R.A. 370, 12 S. W. 328; Moore v. Albany, 98 N. Y. 396.

Inharmonious relations do not justify intrusion of a stranger to injury of either husband or wife. These are pertinent to measure of damages only. Higham v. Vanosdol, 101 Ind. 160; Fratini v. Caslini, 66 Vt. 273, 44 Am. St. Rep. 843, 29 Atl. 352; Nevins v. Nevins, 68

Kan. 410, 75 Pac. 492; Rath v. Rath, 2 Neb. (Unof.) 600, 89 N. W. 612; Wales v. Minor, 89 Ind. 118; Michael v. Dunkle, 84 Ind. 544, 43 Am. Rep. 100; Modisett v. McPike, 74 Mo. 636.

Goss, J.   This action is for damages for defendant's alienation of the affections of plaintiff's wife.   The complaint charges defendant with alienating the wife's affections, and that this resulted in the separation of plaintiff's family.   Plaintiff recovered a judgment ordered on a verdict for $3,300.   More than two weeks were occupied in the trial of the case, and the record is very voluminous, containing nearly four hundred assignments of error.   The following statement, with the facts appearing in the opinion, will sufficiently explain the law governing the case:

Plaintiff and wife were married in 1887; have three children living, whose ages range from seven to fifteen years.   They lived in Iowa until 1900, when plaintiff came to Richland county, his wife and family joining him there in the spring of 1901; there they remained until their separation on February 27, 1904, when the wife, Mary Luick, after a division of the property between husband and wife then had, removed to Iowa, taking the children with her, plaintiff remaining. The wives of plaintiff and defendant were half-sisters.   Defendant is, and always has been, a resident of Iowa.   Mary Luick's mother resides in Iowa, and it was to her place that the wife went on her leaving the home of plaintiff.

Plaintiff and wife had little domestic trouble until they came to North Dakota, although there is some testimony of isolated instances of alleged mistreatment of the wife by the plaintiff during their residence in Iowa.   On the trial the wife testifies to many exhibitions of temper by her husband toward her from shortly after her marriage, and charges him with frequently applying toward her vulgar and obscene epithets, and that this, with their frequent disagreements, caused her loss of affection for him prior to her removal to North Dakota.   That thereafter she frequently wrote to her relatives in Iowa, among them her brother, mother, and defendant's wife, complaining to them of plaintiff's treatment of her, and stated her intention of leaving plaintiff. Defendant and plaintiff had always been friends and dealt in a business way with each other, in the course of which transactions defendant purchased lands in plaintiff's neighborhood in North Dakota.   Defend-

ant had been at plaintiff's home here on several occasions. On the 22d of February, 1904, plaintiff's wife's brother, accompanied by the defendant, appeared at plaintiff's residence, and shortly afterward announced that they had come to settle up matters between plaintiff and his wife and assist the wife and children back to Iowa. As to what occurred from this point on the testimony is very conflicting, plaintiff testifying to facts which, if true, show an interference by the defendant in plaintiff's family affairs, ending with the separation of plaintiff and wife, and in the preparation, execution, and delivery of articles of agreement effecting the division of the property and custody of the children, the wife securing deeds to the lands, and removing with the children to Iowa, accompanied by her brother and the defendant. After the expiration of one year and three days, or practically as soon as the wife had acquired the one-year's residence required by the statutes of Iowa before commencing an action for divorce, she instituted such an action against the plaintiff, charging him with cruel and inhuman treatment endangering her life during a period covering practically their entire married life, and asking a divorce, alimony, and custody of the children. The plaintiff appeared in the divorce proceedings and charged his wife with desertion, based on her leaving his home in North Dakota, February 27, 1904, and litigated on the merits the matters so put in issue in the divorce case in Iowa. The trial court granted the wife the custody of the children, alimony, and a divorce from the plaintiff, on the grounds of his cruelty alleged, finding against the plaintiff on his cross bill charging her with desertion. Plaintiff appealed to the supreme court of Iowa, which appeal was pending at the time of the trial of this case against defendant, Arends, in district court, but has subsequently been decided, as reported in 132 Iowa, 302, 109 N. W. 783, in favor of the wife by an affirmance by the Iowa supreme court of the trial court's decision.

This case, Luick v. Arends, was commenced in January, 1905, prior to the commencement of said divorce proceedings, and before the year's residence had been acquired by plaintiff's wife in Iowa. The trial of this action was had, commencing in February, 1906. The defendant pleaded the foregoing divorce proceedings, excepting the affirmance by the supreme court of Iowa of the decree of the district court, as a bar to the action and as estopping plaintiff from recovery, claiming the divorce on the merits in Iowa was an adjudication of all facts found and issues determined in such action, against plaintiff's alleged cause

of action in this case, and an estoppel by judgment precluding plaintiff's recovery. On the trial defendant, in support of his answer, offered the Iowa decree of divorce, and the same was received in evidence; he also offered in evidence properly exemplified copies of the summons, complaint, and answer of the parties litigant in the Iowa divorce case; this after the court had received in evidence the Iowa statutes as a foundation for the offer of the said pleadings. On plaintiff's objection, such offer of proof was rejected and the proof excluded by the trial court. The decree of divorce received did not state the grounds upon which the same was granted, and defendant maintains that the pleadings upon which the decree was granted are admissible; that the same would, when construed with the decree, operate as a bar to this action, and are also admissible as independent evidence tending to refute the averments of plaintiff's complaint, and substantiate the defense that the wife left plaintiff because of her loss of affection occasioned by plaintiff's cruelty toward her.

At the outset then, we are confronted with the question whether the decree of divorce granted the wife from her husband, the plaintiff, upon the court's findings of cruel and inhuman treatment of her by the plaintiff, endangering her life, covering the identical period of time embraced within the pleadings and evidence in this action between plaintiff and a third person, is *res judicata* or an estoppel by judgment on those questions and plaintiff's treatment of his wife, under investigation in this case against Arends, who was a stranger to the divorce action. The result of the divorce action was a judgment against this plaintiff, finding him at fault in the disrupting of his family relations, and adjudging the dissolution of the marriage because thereof, and justifying her action in leaving him. If the findings and judgment in the divorce proceedings are binding upon the plaintiff in this case, they absolutely preclude his recovery, and further discussion of the case and errors alleged would be needless.

The authorities are practically unanimous in their holdings that the decree is admissible, and is *res judicata* as against the world, only to the extent of judicially establishing the prior existence of the marriage and its dissolution and the status of the parties thereafter under the decree. To this extent only is the divorce judgment a judgment *in rem* and *res judicata* in this action; the divorce decree establishes its own existence only, and thereafter the status of the former husband

and wife, as between themselves and the world; but the judgment of divorce does not carry into this case, under the rules of former adjudication or estoppel by judgment, the issues involved in the divorce trial, nor the grounds upon which the decree of divorce was granted. For reasons of public policy only does the law treat the divorce action as a proceeding *in rem,* and this only to the above extent. It is a well-known rule of law that in a proceeding strictly *in rem* not only the parties named in the action, but the world, is concluded by the judgment, not only to the extent of the judgment itself, but as to all matters in issue and necessarily determined in the findings of fact and decision of matters of law upon which the judgment is based; but a divorce decree is in all things a judgment *in personam,* and as such the rules of evidence applicable to judgments *in personam* apply, except so far as the same is to be treated as a judgment *in rem* as above stated. Hence, the Iowa divorce decree is not admissible in evidence except to establish its own existence, the marriage of the parties being admitted, and as bearing upon the admissibility of testimony relating to the statute as to privileged communications between husband and wife. It is not *res judicata* to plaintiff's cause of action; it does not estop by judgment plaintiff from asserting his cause of action against defendant, Arends. Arends was a stranger to the record in the Iowa divorce proceedings; the judgment in that case did not bind him, except as it operated as against the world in certain particulars only as a judgment *in rem.* The rule is general that a judgment or decree is not admissible in evidence as *res judicata* on the facts involved, or to operate as an estoppel by judgment in other than actions strictly *in rem,* except as between parties or privies. There must be a mutuality between the parties to the action in which the decree is rendered and in the action in which it is offered, and it is only admissible in favor of a party when it would be admissible against him if the decree had been the other way. Applying this test, it is plain that the trial court's ruling in excluding the grounds upon which the decree was entered is correct. Suppose the plaintiff in this action had prevailed in the divorce suit under his claim of desertion by the wife, and in this action plaintiff had offered in evidence the decree of divorce granted him and entered against his wife's claim of cruelty, as proof that he had not been guilty of the acts of cruelty charged in defendant's answer in this case, and had not by cruelty alienated her affections. It is clearly apparent that

such testimony would be inadmissible as against the defendant in this action; he was not a party to the divorce action, nor could he be, nor could he have privity with any party to that action for divorce. The rule is thus stated in Black on Judgments, vol. 2, § 548, in the following language: "It is essential that its operation be mutual. Therefore, a party will not be concluded against his contention by a former judgment, unless he could have used it as a protection or as the foundation of a claim had the judgment been the other way; and conversely, no person can claim the benefit of a judgment as an estoppel upon his adversary unless he would have been prejudiced by a contrary decision of the case." Greenleaf on Evidence, §§ 523, 524, is to the same effect: "It is also a most obvious principle of justice that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger, he may well be held bound. Under the term 'parties' in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defense or to control the proceedings and to appeal from the judgment. This right involves also the right to adduce testimony and to cross-examine the witnesses adduced on the other side; persons not having these rights are regarded as strangers to the cause. But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them or in privity with them, are equally concluded by the same proceedings. We have already seen that the term 'privity' denotes mutual or successive relationship to the same rights of property. The ground, therefore, upon which persons standing in this relation to the litigating party, are bound by the proceedings to which he was a party, is that they are identified with him in interest, and wherever this identity is found to exist all are alike concluded. . . . But to prevent this rule from working injustice, it is held essential that its operation be mutual; both the litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either. For, if the adverse party was not also a party to the judgment offered in evidence, it may have been obtained upon his own testimony, in which case to allow him to derive a benefit from it would be unjust. Another qualification of the rule is that a party is not to be concluded by a judgment in a prior suit or prosecution, where, from the nature or

course of the proceedings, he could not avail himself of the same means of defense or redress which are open to him in the second suit."

Wigmore on Evidence, § 1348, subdivision 2A, recognizes the fact that apparently contrary judgments may be rendered by different courts on the same facts, as counsel contends has resulted in this action, between different parties, under this rule, by the following comment upon it: "A judicial judgment binds only the parties to the specific litigation, and therefore the same question of fact must be investigated anew, even innumerable times, between parties not affected by prior judgments. There may therefore be an analogous situation in which innumerable parties will be affected by a fact common to the rights or duties of all, and this fact, in the absence of a judicial proceeding binding on all, may be from time to time differently determined by different juries and judgments in successive litigations."

See authorities collected in 30 Century Dig. Cols. 1984, 1985, and 1883–1887. See also Freeman on Judgments, § 159: "The operation of estoppels must be mutual; both litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either."

The reports contain many cases for alienation of affections in which this doctrine of *res judicata* has been unsuccessfully attempted as a defense, under issue similar to those before us. As an instance, see Sickler v. Mannix, 68 Neb. 21, 93 N. W. 1018, in which case the husband of the defendant, Ellen Mannix, had obtained a decree of divorce from her on grounds of her extreme cruelty, and the same was offered in evidence by plaintiff in error, corresponding to the defendant in this case, on the same grounds as the defendant seeks the introduction of the same kind of a decree and same complaint as in this case on trial. The appellate court sustained the trial court in excluding such testimony, using the following language: "We do not think that error can be predicated on the refusal of the court to allow the record in evidence. Mrs. Sickler was not a party to that suit, and it is only where a judicial record contains an admission of one or the other of the parties to it that it is admissible as such in favor of a stranger." Citing Greenl. Ev. § 527A. This case is on all fours with the case before us. See also Knickerbocker v. Worthing, 138 Mich. 224, 101 N. W. 540, which case is identical with the matters under consideration in this case, alienation of wife's affections, when read in connection with the divorce case of Knickerbocker v. Knickerbocker, 135 Mich. 102, 97

21 N. D.—40.

N. W. 1117, in which last case judgment for divorce in favor of the wife for cruel and inhuman treatment is ordered against her husband, who had pleaded and attempted to prove in his action against her, her adultery; and afterwards in his case against Worthing, above cited, he sued and recovered for alienations of affections occasioned by the adultery of the wife with Worthing during the same period mentioned in the divorce proceedings, and this in spite of the fact that the wife had been granted a divorce the same as has the wife in this case on trial. The court, considering the same question now under discussion, used the following language: "Counsel also says that because the court passed upon that phase of the case, and found the charge of adultery was not made out in the divorce case, the decree in that case is conclusive upon that question, citing as to both of these claims, Gleason v. Knapp, 56 Mich. 291, 56 Am. Rep. 388, 22 N. W. 865. There is language in the opinion in that case which tends to justify the claim of counsel, but when the case is considered carefully it will be found to be distinguishable from this one. In the case brought by him [Gleason] against Knapp, the court found the facts sworn to by him were entirely contradictory to his sworn bill against his wife. The question involved in the case of Knickerbocker v. Knickerbocker was whether the wife was entitled to divorce upon the ground of cruelty. We held that she was. The question involved here is whether the affections of Mrs. Knickerbocker were alienated by the unlawful acts of the defendant. We think the case comes within Correy v. Lackey, 105 Mich. 363, 63 N. W. 418."

The above is quoted at length for the reason that it is the ruling of that court upon the matter before us, distinguishing a case cited by appellant as supporting his contentions in this case on this question. The case of Gleason v. Knapp is further distinguishable from the case on trial in as much as in that case the doctrine really applied was that of estoppel by pleadings, whereby Gleason was not permitted to take a position in his alienation of affections case diametrically opposed to his verified complaint in his divorce case. This plaintiff is now alleging practically the same facts as he alleged in defense of his wife's action for divorce. As the divorce judgment is not mutual under the above authorities, it does not bar him from alleging the same facts in his complaint in this action. There is no estoppel because of his pleadings, his claims in each case being consistent, consequently the case cited,

Gleason v. Knapp, does not apply. The case Correy v. Lackey, cited in the above quotation, holds that "The fact that defendant's wife procured a divorce from him on the ground of extreme cruelty will not conclude him from denying that he was guilty of cruelty, on an issue as to her justification in leaving him, raised in an action against him by a third person for necessaries furnished the wife after she had left her husband, and before getting her divorce."

To the same effect also is Michael v. Dunkle, 84 Ind. 544, 43 Am. Rep. 100, where the wife obtained her divorce as in the case on trial, and the husband, Michael, sues the third party for alienation of affections and criminal conversation with his former wife. It was sought to make the divorce and grounds thereof *res judicata* in favor of Dunkle, the stranger to the divorce action. The court disposed of the question summarily in the following language: "The woman was still the appellee's wife, and, notwithstanding the differences which had led to the separation, which it seems was caused by his cruelty, there might have been a reconciliation between them, and, indeed, there is evidence that the appellee was seeking to bring this about at the time the offenses of the appellant were committed and discovered. After this discovery, it is not strange that the appellee permitted his wife without resistance to obtain a divorce; but he did not thereby waive or lose his right to redress for the injury done. It would not be in the interests of good order and the public morals to permit the seducer of a wife to set up a disagreement or even a separation between her and the husband, as a complete defense to an action by the latter for the wrong. Judgment affirmed." Cited and followed in Wales v. Miner, 89 Ind. 118. See also Modisett v. McPike, 74 Mo. 636, to the effect that, although a wife may have a just cause for a separation or divorce from her husband, and she may separate or obtain a divorce from him, assigning such cause as the ground thereof, yet, if she would not have sought the separation or sued for the divorce but for the intentional and unsolicited interference of a third person inducing her so to act, such separation or divorce or just cause therefor does not of itself constitute any defense to an action by the husband against such person for the loss of his wife's society, services, and affections. In this case the decree was received in evidence, but was held not a bar to recovery.

In Coney v. Harney, 53 N. J. L. 53, 20 Atl. 737, in a case similar to the one on trial, on the same question under consideration as the

present, the court used the following language: "It has been contended in support of the plea that the decree therein set up is conclusive against the plaintiff as *res judicata*, and affords defendant a bar to this action. It was argued with ingenuity and no little force that the law ought not to permit one who has made an issue of this character, and, having presumably produced all the evidence in his power, has encountered a defeat thereon, to again vex the courts by a retrial of the same issue. Such considerations have elsewhere induced legislation providing for making the alleged adulterer a party to the divorce proceedings as corespondent, but no such legislation has changed our law. We are therefore left to enforce the well-settled and undisputable rule on this matter, an estoppel, even by the judgment of a court, must be mutual, to be admissible in bar, and such a judgment will bind only those who are party or privy thereto. Here defendant was neither party nor privy. There was no mutuality; for had it been adjudicated that defendant had committed the adultery charged in the cross petition, such adjudication manifestly could not have been set up against him. Under the rule referred to, he cannot set up the adjudication in his favor." This is our case over again, except in the divorce proceedings out of which the action for damages arose, both the plaintiff and his wife charged the other with adultery, the wife recovering judgment for divorce on her husband's adultery, the husband's allegations as to the wife's adultery with the defendant having been dismissed; and thereafter the husband recovers judgment against his former wife's paramour for adultery with plaintiff's wife; the divorce proceedings exonerating the wife from adultery, and finding the husband guilty thereof; the alienation case thereafter in effect finding the paramour with the wife guilty of adultery with her, and awarding the wronged husband damages therefor.

Two Kentucky cases construed together furnish us nearly a counterpart to the case on trial. They are Klein v. Klein, 29 Ky. L. Rep. 1042, 96 S. W. 848, and Klein v. Klein, 31 Ky. L. Rep. 28, 101 S. W. 392. The first was an action brought by the wife against the husband to obtain alimony, to which the husband answered, and, by counterclaiming against the wife, sought a divorce from her on the ground of her abandonment of him. The trial court dismissed his counterclaim and awarded the wife a monthly alimony, and on the husband's appeal the judgment was reversed, and the supreme court ordered a divorce granted on the husband's application based on the wife's deser-

tion. The testimony involved difficulties of the wife with the husband's parents, so that their conduct toward the wife was in issue in the divorce proceedings. Thereafter the wife, though divorced by the husband as the party in fault, commenced her action for damages against the parents of her husband for alienating her husband's affection and separating him from her, and recovered judgment against them for $5,000, and the verdict was upheld. The court in so doing determined the same was not excessive. The facts are practically parallel with the case at bar, in which the plaintiff herein, though adjudged the guilty party in the divorce, recovers judgment similarly against a third party, though the facts litigated and the issue in each case were practically identical. Klein v. Klein, 31 Ky. L. Rep. 28, 101 S. W. 383, is quoted as authority later in this opinion.

For additional authorities that a divorce is not a bar to an action for previous criminal conversation or alienation of affections, see Prettyman v. Williamson, 1 Penn. (Del.) 224, 39 Atl. 731; Postlewaite v. Postlewaite, 1 Ind. App. 473, 28 N. E. 99; Haynes v. Nowlin, 129 Ind. 581, 14 L.R.A. 787, 28 Am. St. Rep. 213, 29 N. E. 389; Clow v. Chapman, 125 Mo. 101, 26 L.R.A. 412, 46 Am. St. Rep. 468, 28 S. W. 328; Beach v. Brown, 20 Wash. 266, 43 L.R.A. 114, 72 Am. St. Rep. 98, 55 Pac. 46; Purdy v. Robinson, 133 App. Div. 155, 117 N. Y. Supp. 295; Keen v. Keen, 49 Or. 362, 10 L.R.A.(N.S.) 504, 90 Pac. 147, 14 A. & E. Ann. Cas. 45; Dickerman v. Graves, 6 Cush. 308, 53 Am. Dec. 41; Ratcliff v. Wales, 1 Hill, 63; Smith v. Smith, 98 Tenn. 101, 60 Am. St. Rep. 838, 38 S. W. 439; Burlen v. Shannon, 3 Gray, 387; Gill v. Reed, 5 R. I. 343, 73 Am. Dec. 73. Nor does the fact that the husband may have separated from the wife bar an action for alienation of her affections. Cross v. Grant, 62 N. H. 675, 13 Am. St. Rep. 607; Browning v. Jones, 52 Ill. App. 597; Schorn v. Berry, 63 Hun, 110, 17 N. Y. Supp. 572; Jenkins v. Chism, 25 Ky. L. Rep. 736, 76 S. W. 405. The husband's right and chances of reconciliation, after separation of husband and wife, cannot wrongfully be interfered with, or prevented by a third person, without giving the husband a right of action for alienation of wife's affections. Fratini v. Caslini, 66 Vt. 273, 44 Am. St. Rep. 843, 29 Atl. 252; Dallas v. Sellers, 17 Ind. 479, 89 Am. Dec. 489; Bishop, Marr. & Div. § 1362. The previous terms upon which a husband and wife may have been living, no matter how inharmonious they may have been,

furnish no justification for a stranger intruding into the home and carrying away one or the other, or alienating the affections of husband or wife. Nevins v. Nevins, 68 Kan. 410, 75 Pac. 492; Rath v. Rath, 2 Neb. (Unoff.) 600, 89 N. W. 612. Death of the wife whose affections were alienated does not bar or abate the action. Yundt v. Hartrunft, 41 Ill. 9.

The foregoing authorities, all in cases brought for alienation of affections or criminal conversation, might be multiplied by numerous citations in cases of a different nature, in which the same doctrine has been applied without variance.

See Jacobs v. Miller, 41 Mich. 90, 1 N. W. 1013; Whitcomb v. Hardy, 68 Minn. 265, 71 N. W. 263; Goodnow v. Litchfield, 63 Iowa, 275, 19 N. W. 226; Nowak v. Knight, 44 Minn. 241, 46 N. W. 348; Densmore v. Tomer, 14 Neb. 392, 15 N. W. 734; Bell v. Wilson, 52 Ark. 171, 5 L.R.A. 370, 12 S. W. 328; Moore v. Albany, 98 N. Y. 396, on p. 400.

The review of authorities would not be complete without reference to the case of Hamilton v. McNeill, 150 Iowa, 470, 129 N. W. 480, in which case that court, by a divided opinion, based upon § 3181 of the Iowa Code, holds under the Iowa statute that the guilty party under the divorce decree forfeits any cause of action he may have for alienation of his former wife's affections. The majority opinion discusses the question of how far the divorce decree, including the grounds upon which it is issued, is *res judicata* as against the defendant in the alienation case, and announces its conclusion contrary to the settled rule illustrated by the foregoing authorities, and contrary to our holding in this case. But it is noticeable that, in the eighth paragraph of the opinion, that court makes it plain that its decision "is based upon the statute and upon that alone as all sufficient;" that "the only question of public policy involved is that of the statute," and "the only question of estoppel involved is that which adheres in the case of divorce." Considering the very able dissenting opinion of Judge Deemer, it is easy to ascertain the reason why the majority expressly based its holding solely upon the statute. The dissent leaves little if anything upon which to hang the majority opinion, so far as the majority opinion is to be considered as other than a construction of the Iowa statute. The action of the majority of that court under the fire of the dissenting opinion, in practically abandoning all propositions advanced in

its opinions, except, solely the one of statutory construction, must be taken as authority to the contrary of their conclusions so advanced and so abandoned, and in line with the dissent, and as authority for our conclusions in this case.

We might in passing remark the action of the Iowa court in Sexton v. Sexton, 129 Iowa, 487, 2 L.R.A.(N.S.) 708, 105 N. W. 314, hereinafter discussed, in ignoring the Iowa statute as to privileged communications between husband and wife, on the express grounds that such statute and rule was never intended to be applied to cases of alienation of affection; and the contrary action in Hamilton v. McNeill, wherein the court goes to great lengths to overrule the former decision of Wood v. Mathews, 47 Iowa, 409, and construes a statutory forfeiture into the same kind of an action on a statute of doubtful application.

See also McNamara v. McAllister, 150 Iowa, 243, 34 L.R.A.(N.S.) 436, 130 N. W. 26, an Iowa case decided since Hamilton v. McNeill, above cited. In McNamara v. McAllister, a divorce decree procured because of the cruel and inhuman treatment of the husband toward the wife, the husband being adjudged the party at fault, was plead in mitigation of damages by a third party defendant in an action by the husband against him for alienation of the affections of the former wife. On a ruling on a motion to strike that portion of the answer pleading the divorce from the record, the court uses the following language: "The decree of divorce obtained by plaintiff's wife is not pleaded as a complete defense, but in mitigation, or at least it may be so considered. As this matter may doubtless be treated in mitigation of damages, and under the recent decision of Hamilton v. McNeill, 150 Iowa, 470, 129 N. W. 480, in bar of the action, the motion to strike was properly overruled." From the language used, it may still be considered in doubt as to whether the holding in Hamilton v. McNeill will be adhered to, should McNamara v. McAllister again reach that court on the facts.

The trial court's action in excluding the divorce record was proper.

The defendant's attempted defense under the doctrine of *res judicata,* in the light of all authorities on the question, cannot be successfully maintained. It would indeed be a strange condition of affairs if a stranger might invade the home, carry the wife into a foreign jurisdiction, and, by the exercise of the same influence that lead her away,

persuade her to procure a divorce, and then urge the fact of divorce as a bar to an action for the very wrong that brought it about.

The section of the Iowa Code, 3181, above referred to, was not offered in evidence in this case. But mention was made of this statute in defendant's argument. Defendant urges that this statute with the Iowa court's construction of it should be given force and be adopted as the law of this case. In other words, it is urged that, because the divorce was granted in Iowa, the Iowa statute, § 3181, providing: "When a divorce is granted the guilty party forfeits all rights acquired by the marriage," as construed in Iowa to be a forfeiture of any right of action by the guilty party of a cause of action for alienation of the wife's affections, should be given force here, and forfeit plaintiff's right of action in this case against Arends.

The cause of action we are asked to declare forfeited by this provision came into existence and fully accrued in this state, while the parties were residing here for several years. Their separation occurred here. For the statute to have force, there must be a divorce granted in Iowa and a guilty party under the Iowa statute; and the rights to be forfeited must be subject to the Iowa jurisdiction, also extraterritorial force must be given to the Iowa statutory penalty so imposed under the Iowa statute. Considering these questions in order, the divorce must be granted before the forfeiture applies, even in Iowa. The forfeiture then comes as a consequence or incident of the divorce. The cause of action for alienation of affections exists in Iowa until divorce. Such are barred by the divorce, being dependent on the decision of the cause of action for divorce. It is not then a question solely of rights acquired by the marriage, but a question of rights acquired by the marriage and forfeited by divorce by the party adjudged to be the guilty party in the decree. In other words, the forfeiture so declared is a statutory penalty for being the guilty party under the divorce proceedings, and is in the nature of a penalty for being guilty of acts constituting grounds for the divorce. In this connection we might observe that, had the wife, on separation from her husband at the procurement of defendant, as has been found by the jury in this action to be the fact, domiciled herself for divorce purposes in some state other than Iowa, we would not be construing this statute, but, by the same course of reasoning under which it is now urged before us for consideration, perhaps a different statute would be under consid-

eration under this plea for a foreign statute to override our own statute and ordinary course of procedure in this case. It is then singular, granting in argument defendant's contention, that an existing cause of action in favor of the plaintiff can turn on the caprice of the wife as to the selection by her of her domicil for the contemplated divorce. Had Hamilton v. McNeill been decided before the separation, and if the doctrine now presented by defendant for our consideration is to be approved, and extraterritorial force thereby given to the Iowa statute and decree, we have no doubt the wife, if acting under legal advice, would have domiciled herself in Iowa, that the divorce, if obtained by her at all, might accomplish the double purpose of protecting this defendant from the accrued right of action for damages in litigation in this case.

Again referring to the statute, we observe that there must be to the proceedings what is there designated a "guilty party," in order for the statute to operate as a forfeiture. It is significant that under our law no one is branded by a decree of divorce, or the law under which the same is granted, as a "guilty party." Such a term is unknown to our statute. In Iowa the penalty for being adjudged the guilty party is a forfeiture of all rights acquired by the marriage. We have no such designation or statutory penalty. This, while perhaps not controlling, is significant. Instead, we have § 4048, reading: "Marriage is dissolved only, (1) by the death of one of the parties, or (2) by judgment of a court of competent jurisdiction decreeing a divorce of the parties. The effect of a judgment decreeing a divorce is to restore the parties to the state of unmarried persons, except that neither party to a divorce may marry within three months after the time such decree is granted." Our statute is plain. The parties are restored to the state of unmarried persons, excepting only the prohibition against remarriage within three months. They are not restored to the state of unmarried persons, except as the laws of Iowa or some other state operate to forfeit a cause of action for alienation of wife's affections. After divorce, the former parties to the marriage relation are in no respect under the law burdened with the former marriage; they carry, by virtue of the marriage so dissolved, none of its burdens over, upon, and into the next marriage either may contract. They, being unmarried persons, enjoying all rights under the law as such, may maintain actions at law on any cause of action recognized by our law as such,

including actions for alienation of affections. While the proof in such an action may embody circumstances that arise out of the marriage of the parties in Iowa, likewise their divorce in Iowa, likewise the existence of the parties, their age, status in life, and other evidentiary facts presumed, admitted, or provable in the action for alienation of affections, altogether making a cause of action recognized by law existing complete as a property right, we can see nothing therein to thereby necessarily distinguish such a cause of action from any other available to litigants in our courts. Why, then, should a foreign statute be by court decision imported into the law of this case, in direct contravention of our own statute above quoted? The policy of our state is as declared by our legislative acts, and, where so declared, they are controlling, and exclude even the common law, except as they are declaratory or continuations thereof.

But it is urged that the Iowa statute with the court's construction of it should be adopted as the law of this case, under some rule of comity between states that the same should be given extraterritorial force. To do so, were it not overriding our own statute as above explained, would be to fail to conceive the real reason under which decrees of divorce are given interstate and international effect. The decree does not of itself operate as a binding adjudication in other states the same as in the state where it was rendered, but, instead, the decree confers a status upon the divorced parties which, like the status of marriage, is valid everywhere if valid where created. The same rule applies as to marriages. Plaintiff's marriage and divorce were not given extraterritorial force when he moved from Iowa to North Dakota, when recognized here, but his resulting status was recognized in the first instance as that of a married man; and after divorce as that of an unmarried person, under our law conferring upon him the status of an unmarried person under § 4048 of the Code. He is now suing as an unmarried person on the right acquired and existing to him as a property right, a cause of action before his divorce, and before the divorce under the law cast upon him the status of an unmarried person. The doctrine of extraterritorial force has nothing to do with this right or in this case. See 1 Nelson, Divorce, § 32. Then, again, the doctrine of extraterritorial force of decrees of divorce is never applied in cases other than those involving the validity of the decree or some incident dependent thereon, such as arise under the inheritance laws or

under estates by dower or courtesy, or in criminal prosecutions for adultery or bigamy, or civil actions for damages, merely because the action is available to a party formerly married. 1 Bishop, Marr. & Div. chap. 29, and particularly § 966.

Some courts in divorce matters, in considering provisions of statute somewhat similar to our own, providing that neither party divorced shall remarry within a certain length of time, have given extraterritorial force to such provision. Some have not. An investigation of the authorities in this particular shows an irreconcilable conflict between the different jurisdictions. Some statutes provide that this provision of law shall be contained in the divorce decree, and such decree shall recite such prohibitions against remarriage within a statutory period. Other statutes forbidding such relation declare the invalidity of the marriage. Even in the face of such statutes, marriage is contracted without the jurisdiction of the court rendering the decree, and is at time upheld, the courts on the grounds of public policy refusing to give extraterritorial force or effect to such statutes, even when embodied within the decree of divorce itself. The courts declare such statutes penal in nature, and refuse them extraterritorial force.

As examples, however, of the conflicting decisions on this subject, see the following cases cited, only a few among the many, against extraterritorial doctrine, declaring that, if marriage where performed is valid, it is valid everywhere: Frame v. Thormann, 102 Wis. 653, 79 N. W. 39, affirmed as U. S. rule in 176 U. S. 350, 44 L. ed. 500, 20 Sup. Ct. Rep. 446; Re Wood, 137 Cal. 129, 69 Pac. 900; Park v. Barron, 20 Ga. 702, 68 Am. Dec. 641; Petit v. Petit, 45 Misc. 155, 91 N. Y. Supp. 979; Willey v. Willey, 22 Wash. 115, 79 Am. St. Rep. 923, 60 Pac. 145; Chase v. Chase, 191 Mass. 166, 77 N. E. 782; Van Storch v. Griffin, 71 Pa. 240; Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505; Ovitt v. Smith, 68 Vt. 35, 35 L.R.A. 223, 33 Atl. 769; Com. v. Lane, 113 Mass. 458, 18 Am. Rep. 509; Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321; Phillips v. Madrid, 83 Me. 205, 12 L.R.A. 862, 23 Am. St. Rep. 770, 22 Atl. 114; State v. Yoder, 113 Minn. 503, — L.R.A.(N.S.) —, 130 N. W. 10.

Contrary rule in following jurisdictions: McLennan v. McLennan, 31 Or. 480, 38 L.R.A. 863, 65 Am. St. Rep. 835, 50 Pac. 802; Eaton v. Eaton, 66 Neb. 676, 60 L.R.A. 605, 92 N. W. 995, 1 A. & E. Ann. Cas. 199; Barfield v. Barfield, 139 Ala. 290, 35 So. 884; Pennegar v.

State, 87 Tenn. 244, 2 L.R.A. 703, 10 Am. St. Rep. 648, 10 S. W. 305; State v. Kennedy, 76 N. C. 251, 22 Am. Rep. 683; Scott v. State, 39 Ga. 321; Dupre v. Boulard, 10 La. Ann. 411; Kinney v. Com. 30 Gratt. 858, 32 Am. Rep. 690; Williams v. Oates, 27 N. C. (5 Ired. L.) 535; Tyler v. Tyler, 170 Mass. 150, 48 N. E. 1075, interpreting recent Massachusetts statutes so declaring; Brook v. Brook, 9 H. L. Cas. 193, 7 Jur. N. S. 422, 4 L. T. N. S. 93, 9 Week. Rep. 461.

In such class of actions, where the validity of a marriage may directly depend upon the question of extraterritorial effect of the statutory prohibition violated by the remarriage, the refusal of the courts to so apply it is certainly authority to justify a refusal to, by the same doctrine, ingraft the Iowa statute governing Iowa procedure into this action for alienation of affections, in the face of the mandate of our own statute declaring that the plaintiff stands before us clothed with the status of an unmarried person.

As to this novel theory so ingeniously advanced, we cannot agree with defendant. This action on trial was instituted and at issue on the pleadings before plaintiff's wife had acquired a residence in Iowa sufficient to confer jurisdiction on the courts of that state to entertain her petition for divorce. Had this case proceeded to speedy determination, judgment could have been entered herein before the wife could have procured her divorce, in which case defendant's contention certainly could not have been urged, as the facts upon which it is based never would have existed. Then, again, had the wife chosen a state other than Iowa in which to have procured her divorce, the Iowa statute, with that court's construction upon it, would not be before us under the plea that the same should be adopted as the law of this case.

But counsel may urge that this is without the case; that the record has been written and the facts make the case as it is. We reply that the law should not be construed to make the rights of the parties in any case dependent upon a race for judgment between courts in different jurisdictions. Neither should a cause of action based on contract or tort be forfeited except for reasons imperatively demanding such construction; and, further, if our own statute can as reasonably be held to apply to support the cause of action and permit recovery thereon, as to interpolate by construction a foreign statute against an existing cause of action as a bar thereof, we should certainly construe our own statute as applying; to the end that the legislature of this

state, and not foreign statutes, should declare the public policy of this state. Accordingly, the Iowa statute, and likewise that court's construction of it, are in no wise binding upon this court as the law of this case. We have heretofore in this opinion stated that the pleadings and the law upon which the Iowa court's decision in this divorce action was based are not available to the defendant as a defense as *res judicata* against the plaintiff in this action, said divorce not being a proceeding *in rem* to that extent. If such is the case, surely the Iowa statute declaring a mere incident arising from the divorce, as heretofore demonstrated, cannot be extended to this case under any doctrine that a divorce is an action *in rem*. If the issues involved in the divorce case, and the particulars of the judgment aside from divorce, do not under such a doctrine apply, certainly an Iowa statutory penalty there, but a mere result of the divorce, cannot here have force. The contention of the defendant is as unsound as it is unprecedented, as absurd as it is farfetched. Surely the following words of Justice Marshall in United States v. Fisher, 2 Cranch, 389, 2 L. ed. 304, apply with force: "Where rights are infringed, where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness, to induce a court of justice to suppose a design to effect such objects." What a legislature cannot do except by most positive enactment, courts should not do by strained construction. We will not import the Iowa statute for the purposes of this case, to declare a forfeiture of plaintiff's cause of action.

We have precedent from our own state supporting this conclusion. See Adams v. Hartzell, 18 N. D. 221, 119 N. W. 635. This case involved the validity of a deed of assignment for the benefit of creditors, executed within the state of Wisconsin in accordance with the provisions of the Wisconsin statutes, purporting to convey real estate in North Dakota. The court, in an opinion by Judge Spalding, holds that the Wisconsin statutes had no extraterritorial effect on the real estate, and that title thereto was not conveyed. We quote from the opinion as follows: "This rule rests upon the well-established principles that the title and disposition of real property are exclusively subject to the laws of the state where it is situated, and that such state alone can prescribe the mode by which the title can pass; that the laws of one state will not be permitted to control the trust, the action of

the trustees, or the disposition of the trust property, in another state, the subject of the trust being real property,—as well as the general principle that the statutes of a state can operate only within the state which enacts them. We cannot attempt to cite all the authorities supporting this, but give a few only." Citing Security Trust Co. v. Dodd, 173 U. S. 624, 43 L. ed. 835, 19 Sup. Ct. Rep. 545; Townsend v. Coxe, 151 Ill. 62, 37 N. E. 689; Franzen v. Hutchinson, 94 Iowa, 95, 62 N. W. 698; McClure v. Campbell, 71 Wis. 350, 5 Am. St. Rep. 220, 37 N. W. 345; and other cases. The last case cited was a holding that an assignment in bankruptcy, being administered under the direction of the courts of Minnesota, had no extraterritorial effect, and would not defeat an attachment levied upon property in the state of Wisconsin by creditors of the assignor.

It is asserted that at the time of the divorce in Iowa and thereafter at the time of trial of this action, plaintiff Luick was a resident of and subject to the law of Iowa. The record effectively answers this contention to the contrary. The testimony establishes beyond question his residence in North Dakota from and after 1900 until the time of trial in this case, which was long after the determination of the divorce case in Iowa. This is not a case then where a resident of Iowa has invoked the privileges of our courts in the enforcement of an action for damages. This should be borne in mind in connection with the foregoing discussion of our reasons for refusing to give extraterritorial effect to the Iowa forfeiture statute or that court's construction thereof.

This brings us to the subdivision of this opinion treating of the question of privileged communications between husband and wife, under our statute, § 7253, as governed by the first paragraph thereof and § one (1) thereunder. During the course of the trial touching issues involved under the alleged alienation of the wife's affection, the defendant placed upon the stand the former wife of the plaintiff, which wife has been divorced from the plaintiff since the commencement of this action. Defendant sought by the testimony of the wife to disprove that his acts alienated her affections, and show that the conduct of the plaintiff himself alienated the affections of the marital witness, and brought about the separation, the basis of this action for damages.

The questions asked and the testimony sought to be elicited from the wife under these circumstances involve the construction of the statutes

respecting privileged communications between husband and wife, in the following particulars:

First. To what may the wife testify that is not subject to the husband's objection that the same is privileged?

Second. To what does the husband's privilege extend?

Third. Has the wife the right to refuse to answer, and thereby exclude the testimony otherwise admissible from the case?

Fourth. Had the defendant during cross-examination of the wife witness placed on the stand by him, the right to exclude any portion of her testimony on the ground of the same being a privileged communication between husband and wife?

Under some one of the above phases of the question, all of the assignments of error based on privileged communications fall.

A brief discussion of the statute is in order. The section quoted is in substance that no person offered as a witness in an action or proceeding in any court shall be excluded or excused from testifying because such person is the husband or wife of a party to the action, "except as hereinafter provided: (1) A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either during the marriage or afterwards be, without the consent of the other, examined as to any communication made by one to the other during the marriage."

The statute is merely declaratory of the later decisions, modifying the common-law rule as it early existed, then based on the disqualification of the wife witness. Our statute is identical in this respect with Minnesota, Wisconsin, South Dakota, Montana, California, and many other states. The statute declares a privilege only available to the husband or wife as a party or witness, and does not declare a disqualification. The word "privilege" implies an option or a right of waiver. Whatever right is granted as a privilege by the statute can be waived by the party, the husband, and witness, the wife. It is equally apparent that the statute grants the privilege to no one but the husband and the wife. The question, then, is one purely and solely of personal privilege of such persons. Such privilege is the right of the husband as a party to this action, of which he may avail himself as against the testimony of the wife. Likewise, it is the privilege of the wife witness to refuse to disclose communications between herself and husband made during the marriage relation, by law privileged as such, even

though solicited by the husband plaintiff in his cross-examination of the wife witness. The defendant has no right to object on the ground of privilege to any testimony sought of the wife otherwise material, relevant, or competent as proof, the privilege being a personal one and something in which he has no rights. Likewise, to any testimony so admissible given by the wife, solicited by the husband, even though received in violation of the wife's privilege, and, as to her privilege erroneously admitted, the defendant cannot predicate error thereon, nor avail himself of such erroneous ruling on appeal. The question is solely one of privilege, and the privilege is not his. His rights are governed by the rules of evidence relating to the admissibility of the evidence offered and received, and have nothing to do with the personal privilege of husband and wife under the statute.

Let us apply the foregoing reasoning to this case in the concrete. The court, on plaintiff's offer on a foundation laid by the cross-examination of defendant's witness, the wife, and in violation of the statutory provision as to privileged communications, received in evidence a letter of the wife to the husband couched in endearing terms, and expressing and showing her affection for the husband during the time in issue under the evidence and pleadings in the case and, except for the wife's objection on the ground of privilege, admissible as a part of her cross-examination touching matters testified to in her direct examination, and also admissible as testimony of emotions, the existence or nonexistence of her affections being under investigation. The defendant's attorney interposed, among others, the objection that the testimony was that of a privileged communication between the husband and wife, and took exception to the court's reception of the letter in evidence over his objection, and urges the same as error in this court on appeal. For reasons above stated, he has no rights in the matter, and can predicate no error thereon. No right of his has been violated or prejudiced in failing to exclude the proof on the wife's objection, as the proof, had his witness not sustained the relation of wife to the husband plaintiff, would have been admissible.

Defendant in this connection urges that the privilege of the statute extends further than to the husband and wife. This is contrary to the express holding of this court in St. John v. Lofland, 5 N. D. 140, 63 N. W. 930, construing the second subdivision of this section of the statute as to testimony for or against executors or representatives of

deceased persons, the companion statutory provision to the one under discussion. In the case cited this court, speaking by Judge Corliss in an opinion based upon the authorities therein cited from the above states having statutes similar or identical with our own, lays down the rule of strict construction of the statute, instead of "entering into an undefined field of inference and conjecture," holding that the ·statute cannot be extended beyond its express terms.

As authority for the foregoing rules for and construction of this statute, see Wigmore on Evidence, vol. 3, §§ 2196–2243, and cases cited sustaining the text; § 1881, Cal. Code of Civil Procedure, .and cases cited thereunder, in vol. 3, Kerr's Cyclopedic Codes of California; Krueger v. Dodge, 15 S. D. 159, 87 N. W. 965; Clark v. Evans, 6 S. D. 244, 60 N. W. 862; St. John v. Lofland, 5 N. D. 140, 63 N. W. 930; Witte v. Koeppen, 11 S. D. 598, 74 Am. St. Rep. 826, 79 N. W. 831; Van Cise v. Merchants' Nat. Bank, 4 Dak. 485, 33 N. W. 897; Sanders v. Reister, 1 Dak. 151, 170, 46 N. W. 680; Lloyd v. Pennie, 50 Fed. 4, 11; Sexton v. Sexton, 129 Iowa, 487, 2 L.R.A. (N.S.) 708, 105 N. W. 314; Arnett v. Com. 114 Ky. 593, 71 S. W. 635; People v. Gorsch, 82 Mich. 22, 46 N. W. 101; 6 Enc. Ev. 892; Greenl. Ev. § 333; Fuller v. Robinson, 230 Mo. 22, 130 S. W. 342, at page 350.

Some of the above cases, as in Sexton v. Sexton, where the statute, as in Iowa, does not have the provision relative to consent of husband or wife concerning the giving of testimony as to privileged communications between husband and wife, allow the admission of such testimony in direct contravention of the terms of the statute, on the grounds that the statute was not framed to cover cases of criminal conversation or alienation of affections. In Sexton v. Sexton, the court, in speaking of the statute, uses the following language: "Surely it does not lie in the mouth of one who has entered a family circle to dispoil it, to plead the privilege of the statute to the sole end that he may escape the con- sequences of his unlawful act. It was not intended for his benefit, and every consideration of public policy that enters into it forbids him from making of it a cloak to shield himself from being penalized for the mischief he has wrought." This is going farther than strict construction of the statute, and is certainly authority for a strict construction of it in this class of cases.

In the light of the foregoing, then, the husband could control the

21 N. D.—41.

admission of communications by law so privileged, when sought to be given by his wife as defendant's witness, subject to the wife's privilege in the matter to be determined, as to which determination the plaintiff only can predicate error on appeal; that the husband can invoke such rule of exclusion as to such privileged communications under such circumstances at his pleasure; that the rights of the defendant as to admissibility of testimony are independent of, and not concerned with, the statute making testimony of husband and wife privileged under certain circumstances. The rights of the defendant, not being concerned therewith, are governed by the regular rules of evidence aside from such questions of privilege.

Defendant's numerous assignments of error, when viewed from this standpoint, are all untenable, and the record as to privileged communications is free from reversible error.

During the trial the court admitted, over objection, the testimony concerning the wife's affections for her husband up to and after the time of the separation, and in so doing admitted, over objections, declarations of the wife made to third persons in the hearing of the defendant, limiting the admission of such testimony to such statements only as evidenced her state of mind, feelings, or emotions. Such testimony was properly admissible. The existence of affection between husband and wife was under investigation. If no affection for the husband existed for years before the separation, then at such time no action for alienation of affections not in existence could be maintained, except possibly under some of the authorities holding that until divorce the husband's right or privilege to, if possible, reconcile the wife to him, is actionable when he is wrongfully precluded therefrom. On such question of affection, declarations to a third party, asserting the existence of the affection, are admissible, so also her declarations to third persons as to her want of affection; the requirement for admissibility being that they be made at a time when there exists no motive to deceive. They are therefore exceptions to the general hearsay rule of evidence.

See 3 Wigmore, Ev. § 1750, and cases cited; 1 Greenl. Ev. § 162D; Hardwick v. Hardwick, 130 Iowa, 230, 160 N. W. 639; Williams v. Williams, 20 Colo. 51, 37 Pac. 614; King v. Hanson, 13 N. D. 88, at page 101, 99 N. W. 1085; Prettyman v. Williamson, 1 Penn. (Del.) 224, 39 Atl. 731; Fratini v. Caslini, 66 Vt. 273, 44 Am. St. Rep.

843, 29 Atl. 252; Nevins v. Nevins, 68 Kan. 410, 75 Pac. 492; Higham v. Vanosdol, 101 Ind. 160; Horner v. Yance, 93 Wis. 352, 67 N. W. 720; Boland v. Stanley, 88 Ark. 562, 129 Am. St. Rep. 114, 115 S. W. 163; Leucht v. Leucht, 129 Ky. 700, 130 Am. St. Rep. 486, 112 S. W. 845.

But such declarations offered as proof of a lack of affection and regard cannot be shown when made after the commencement of the alienating influences complained of, and the above cases are practically all authority to that effect. The reason for the admission of such testimony ceases with the commencement of the alienating influences. But the declarations of the wife, when otherwise admissible under this rule, cannot be admitted in evidence when they carry with them hearsay evidence as to what the husband did or said, and thus make proof by hearsay of his state of mind or his want of affection toward the wife. Her declarations may be admitted to the effect that she does not love her husband, but her declarations of facts or reasons to justify or explain her lack of love are inadmissible and hearsay, the same as a statement to a third party without the presence of the husband that the husband did or said a certain thing. Jones v. Monson, 137 Wis. 478, 129 Am. St. Rep. 1082, 119 N. W. 179; Fuller v. Robinson, 230 Mo. 22, 130 S. W. 343; Leucht v. Leucht, 129 Ky. 700, 130 Am. St. Rep. 486, 112 S. W. 845; Boland v. Stanley, 88 Ark. 562, 129 Am. St. Rep. 114, 115 S. W. 163; Leavell v. Leavell, 122 Mo. App. 654, 99 S. W. 460.

This rule is particularly applicable to this case because the defendant sets up by way of defense a claim that the husband, by abuse in the form of words and physical violence, himself alienated his wife's affections and drove her from home. It is therefore an important and material issue in the action whether the husband's conduct was of such character as to naturally tend to alienate the wife's affections and accomplish such results. As to this, much testimony in the form of depositions was offered, tending to show statements of the wife made to her relatives and friends in Iowa, of specific acts of abuse and mistreatment of her by her husband, and it was sought to thus by hearsay establish such as facts tending to show that the plaintiff alienated the affections of his wife thereby, not by the testimony of any witness who saw acts or heard words, but by the repetition of statements made by the wife not in the presence of the plaintiff. All testimony of this character was properly excluded under the above authorities and Derham

v. Derham, 125 Mich. 109, 83 N. W. 1005; Roesner v. Darrah, 65 Kan. 599, 70 Pac. 597; Preston v. Bowers, 13 Ohio St. 12, 82 Am. Dec. 430; Leucht v. Leucht, 129 Ky. 700, 130 Am. St. Rep. 486, 112 S. W. 845; Boland v. Stanley, 88 Ark. 562, 129 Am. St. Rep. 114, 115 S. W. 163.

The court admitted certain documents and letters under the above rules of evidence, but protected the rights of the parties by instructing the jury that the evidence was admissible only for the specific purpose for which it was offered, and that the same could not be considered as proof of the substantive facts contained in such exhibits. This was proper.

King v. Hanson, 13 N. D. 85, 99 N. W. 1085; Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639; Magers v. Magers, 143 Iowa, 750, 123 N. W. 330; Gilpin v. Gilpin, 12 Colo. 504, 21 Pac. 612; Dalton v. Dregge, 99 Mich. 250, 58 N. W. 57; 16 Cyc. 1146 and 1184.

The exceptions taken to this line of testimony, as well as to the court's instructions concerning the same, cannot be sustained.

Many assignments of error are urged to the instructions of the court on motive, malice, and presumptions relative thereto, arising by law from the relationship by marriage of the defendant to plaintiff, his former wife, and family. The court instructed the jury as to the law applying to the acts of a stranger in interfering with the family of another by advice or encouragement or solicitation of the wife to leave the husband; and also gave full instructions as to the rights of blood or near relatives to counsel, encourage, or assist, and participate in the separation of husband and wife. While the instructions may be subject to criticism, and certain portions taken alone might be considered erroneous, we are not prepared to hold that the judgment should be reversed on instructions alone. We are satisfied that it was proper to instruct the jury as to both phases of the case under the testimony, and allow the jury to determine whether the defendant was entitled to the exemption from liability accorded relatives in interfering in the affairs of husband and wife. Such questions usually have arisen in cases where parents have given advice in the domestic affairs of married children. The law recognizes the right of the parent, brother, sister, or near blood relative so to act when prompted by proper motives, without malice and for the supposed welfare of the party counseled. The reason for the rule rests on presumptions arising from the relation-

ship itself. The law but recognizes the natural affection of the parent for the child, and applies the ordinary presumption of fact that the parent so acting is free from bad faith or unworthy motives. What is true of the parent is true of the child, when advice is given by the child to the married parent. As illustrative, see Hutcheson v. Peck, 5 Johns, 198; Bennett v. Smith, 21 Barb. 439; Payne v. Williams, 4 Baxt. 583; Reed v. Reed, 6 Ind. App. 317, 51 Am. St. Rep. 310, 33 N. E. 638; Barton v. Barton, 119 Mo. App. 507, 94 S. W. 574; Servis v. Servis, 172 N. Y. 438, 65 N. E. 270; Bennett v. Burkhead, 21 Ark. 77, 76 Am. Dec. 358; Avery v. Avery, 110 Iowa, 741, 81 N. W. 778; Eagon v. Eagon, 60 Kan. 697, 57 Pac. 942; Zimmerman v. Whiteley, 134 Mich. 39, 95 N. W. 989; Leavell v. Leavell, 122 Mo. App. 654, 99 S. W. 460; Tasker v. Stanley, 153 Mass. 148, 10 L.R.A. 468, 26 N. E. 417; Stanley v. Stanley, 27 Wash. 570, 68 Pac. 187; Sheriff v. Sheriff, 8 Okla. 124, 56 Pac. 960; Philp v. Squire, Peake, N. P. Cas. 82, 3 Revised Rep. 659; Schuneman v. Palmer, 4 Barb. 225; Turner v. Estes, 3 Mass. 317; Campbell v. Carter, 6 Abb. Pr. N. S. 151; Smith v. Lyke, 13 Hun, 204; Holtz v. Dick, 42 Ohio St. 23, 51 Am. Rep. 797; Wood v. Mathews, 47 Iowa, 409; Powell v. Benthall, 136 N. C. 145, 48 S. E. 598; 12 Cyc. 1620; 1 Bishop, Divorce, § 1563; White v. Ross, 47 Mich. 172, 10 N. W. 188; Metcalf v. Tiffany, 106 Mich. 504, 64 N. W. 479.

But a stranger stands on different ground entirely. Ordinarily, the very proof of the affection of the stranger for the wife, or *vice versa,* raises the contrary presumption from that presumed from the affection naturally existing between parent and child. With the disappearance of the reason for the rule, the rule itself should fall. "In case of a stranger in blood, the causes must be extreme that will warrant him in interfering with the relation of husband and wife. If he by advice or enticement induces a wife to leave her husband, or takes her away with or without her consent, and encourages her to remain from him, or harbors and protects her while away from him, he does these things at his peril, and the burden is on him to show good cause and good faith for his conduct." Boland v. Stanley, 88 Ark. 562, 129 Am. St. Rep. 114, 115 S. W. 163; Klein v. Klein, 31 Ky. L. Rep. 28, 101 S. W. 382; Hutcheson v. Peck, 5 Johns. 196. "It would seem upon principle to be rare indeed if the motive of a stranger in breaking up a family could be a good one." Rodgers, Dom. Rel. § 176; 1 Jaggard,

Torts, 467; Tiffany, Persons & Dom. Rel. 76; Schouler, Dom. Rel. 41, and cases cited by these. The testimony discloses facts, including correspondence, from which the jury might have concluded a natural friendship and confidential relationship existed between the wife and the defendant, especially in view of the fact of her letters to defendant's wife, her sister, requesting defendant's advice and assistance. Accordingly, the instructions given, leaving to the jury the application of the law according as they found the facts to exist, was proper, and not prejudicial to the rights of either party.

Defendant maintains that the evidence shows the husband freely consented to the separation, and calls attention to the familiar rule of law that ordinarily no one can maintain an action for a wrong when he has consented or contributed to the acts which caused the loss, and asserts that the husband's consent given to the wife's acts constituted a bar to this action for alienation of the wife's affections. 21 Cyc. 619; Prettyman v. Williamson, 1 Penn. (Del.) 224, 39 Atl. 731; Milewski v. Kurtz, 77 N. J. L. 132, 71 Atl. 107; Reading v. Gazzam, 200 Pa. 70, 49 Atl. 889; Hedden v. Hedden, 21 N. J. Eq. 74; Fuller v. Robinson, 230 Mo. 22, 130 S. W. 343; Woldson v. Larson, 90 C. C. A. 422, 164 Fed. 422; Buckel v. Suss, 28 Abb. N. C. 21, 18 N. Y. Supp. 719, s. c. in 21 N. Y. Supp. 907.

Defendant also insists that the evidence taken in its entirety is insufficient to sustain any verdict against him, in that the plaintiff is so impeached and discredited as to render his entire testimony, except where corroborated by credible evidence, unworthy of belief; and that such corroboration is insufficient in many material matters. Plaintiff's testimony constitutes one-fourth of the entire record. With it eliminated except where so corroborated, a recovery cannot be sustained. For over four months this case has been under consideration by this court, and every phase of the testimony bearing on these questions, as well as on all others involved in the case, has been carefully discussed and considered, resulting in a majority of this court having reached the conclusion that from the record the judgment of this court should be pronounced that determination of the jury in plaintiff's favor on the facts was erroneous, in that plaintiff was not entitled to belief, and that the verdict should be set aside; in which conclusion, however, the writer of this opinion cannot and does not agree. But as a dissent on the facts by a single member of the court elucidates no legal principle,

and is really of no effect, the writer concurs in this opinion prepared by him announcing the decision of this court. Accordingly, without an attempted analysis of the conflicting testimony, this court holds the testimony of the plaintiff to be unworthy of belief, insufficient to sustain the verdict, in that, in the absence of proof of the facts which plaintiff's testimony tends to establish, no alienation of the affections of the wife by the defendant, or separation of husband and wife by him, or at his procurement, or as a result of his influence, is established; without taking into account plaintiff's testimony, it appears that plaintiff practically consented to the separation. The written proof establishes that he and wife signed a division of property and made a written agreement as to the custody of the children thereafter. In evidence is a letter purporting to be written by plaintiff to defendant some weeks after separation, thanking defendant for his assistance in adjusting affairs between plaintiff and wife. This letter purports to be signed by plaintiff, and a postmarked envelop strongly corroborative of the mailing thereof from plaintiff's address in this state, to defendant in Iowa, is in evidence. Plaintiff, however, strenuously denies signing or having any knowledge of the letter, and brands it by his testimony as manufactured evidence. This letter, if written by him, would practically establish plaintiff's consent to the doing by the defendant of the acts done and the steps taken by defendant in the final chapter closing the domestic relations of Luick and wife, and tends to absolve defendant from liability.

We will in conclusion pass upon a question of practice in disposing of a remaining assignment of error. In his main case plaintiff called defendant for cross-examination under the statute governing examination of the adverse party, elicited certain information and dismissed the adverse party witness. Defendant's counsel then sought to explain the testimony so elicited under cross-examination, by redirect examination immediately following, and as a part of plaintiff's case. The ruling of the court on plaintiff's objection, excluding such redirect examination, was proper. There is no provision in the statute for the examination proposed by defendant's counsel. While it is a question of practice largely discretionary with the court, the better practice is to keep separate the two sides of the case, and compel defendant to delay testimony in explanation of his cross-examination until defendant offers proof under his main case. This rule has the sanction of supreme court

decision under a similar statute in Minnesota, in Miller v. Carnes, 95 Minn. 179, 103 N. W. 877, and cases therein cited.

This case might have been disposed of on the single assignment of insufficiency of the evidence to justify the verdict, but the exhaustive briefing of the case by all counsel concerned, as well as the time taken in the discussion, review, and consideration of the case in all its details by this court, we urge as our reasons for this extended opinion where a brief one might have sufficed.

The judgment appealed from is ordered reversed, and the case remanded for new trial or further proceedings.

MORGAN, Ch. J., not participating.

SPALDING, J.: I concur without expressing any opinion on the subjects covered by paragraphs 6 and 7 of the syllabus.